**UNITED STATES of America,**
Appellee,

v.

**William GIGLIO and Frank Livorsi,**
Appellants.

**No. 111, Docket 25276.**

United States Court of Appeals
Second Circuit.

Argued Oct. 23, 1958.

Decided Feb. 19, 1959.

Mark F. Hughes, Jr., Asst. U. S. Atty., S. D. New York, New York City (Arthur H. Christy, U. S. Atty., S. D. New York, New York City, on the brief), for appellee.

Joseph Leary Delaney, New York City (Harold W. Wolfram, New York City, on the brief), for appellants.

Before SWAN and MOORE, Circuit Judges, and KAUFMAN, District Judge.

MOORE, Circuit Judge.

Defendants Giglio and Livorsi by judgments entered on March 11, 1955 were convicted after a jury trial of income tax fraud (Internal Revenue Code of 1939), 26 U.S.C.A. §§ 145(b), 3793(b) and conspiracy. Sentences of fifteen years imprisonment were imposed. The convictions were affirmed by this court (United States v. Giglio, 2 Cir., 1956, 232 F.2d 589) and by the Supreme Court (sub nom. Lawn v. United States, 1958, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321).

These defendants thereafter moved to vacate the judgments upon the grounds that their constitutional rights were denied at the trial in that: (a) evidence was used against them as well as leads and clues obtained therefrom in violation of a court order dated March 27, 1953 suppressing such evidence; and (b) in that the government represented on the trial that such evidence would not be, and was not being, used; or granting defendants a new trial for the same reasons.[1]

The basis for the motion was an affidavit by a former Assistant United States Attorney who had been in charge of the prosecution from approximately February or March 1951 to the summer of 1953 to the effect that the government had no knowledge of various items of proof, important both for indictment and prosecution, until after defendants had produced the books and records suppressed by the order of March 27, 1953. The motion upon affidavits and counter-affidavits came on for hearing on April 16, 1958 and after extensive argument was adjourned to April 17. After further argument the court granted a hearing "on the issues raised" (A 2835, Tr. 4691), i. e., by conflicting affidavits. On May 6, 1958 the hearing commenced at which time the former Assistant United States Attorney, whose affidavit had been submitted in support of the motion, was called as a witness and examined by defendants' counsel at length (85 printed pages A 2852-2937; Tr. 4719-4855). After studying briefs submitted the court said that although he "would have been well within [his] rights if [he] decided the motion on the basis of the papers" (A 2962; Tr. 4893), "on all of the affidavits, testimony at the hearing and on the record as a whole before the Court, I have reached my conclusion, and my decision is that the hearing be terminated forthwith, and that the petition, in so far as it seeks the dismissal of the indictment for the use of so-called 'tainted evidence' should be dismissed because of failure to make any showing that that was the fact" (A 2960, 2961; Tr. 4891).

Although the notices of appeal describe the order appealed from as a denial of a motion for a new trial and appellants' brief refers to defendants' application as "in the nature of a writ of error coram nobis" no resort need be had to appellate niceties or technicalities. Clearly, the application contains none of the essential elements for a new trial. There is no showing of any proof discovered since the trial which was not known or which could not have been uncovered on the trial. Turning to coram nobis and considering the facts adduced as a collateral attack on the judgments (28 U.S.C.A. § 2255) they fail to shake in any way the foundation on which the convictions rest.

In 1945 revenue agents began an investigation of defendants' income tax liabilities. In September 1950 criminal informations were filed against them charging tax violations. In July 1952 they were served with subpoenas duces tecum to appear and produce partnership and corporate records. Giglio produced a vast quantity of such records and defendants testified before the grand jury. Shortly thereafter defendants were indicted. Their motion to dismiss the indictments on the ground that evidence

---

1. In the alternative, defendants moved for a reduction of sentence. This motion was denied.

had been obtained in violation of their Fifth Amendment rights was granted and the government was directed to return the partnership and personal records subpoenaed (United States v. Lawn, D.C.S.D.N.Y.1953, 115 F.Supp. 674). In July 1953 the grand jury returned another indictment also charging tax violations. The defendants moved to dismiss this indictment; to have a hearing to determine whether any of the suppressed evidence had been used to obtain it; to inspect grand jury minutes; and to suppress the use upon the trial of evidence illegally obtained. The court denied the motion, holding that there was no room for any inference that the government had used such evidence but that if during the trial defendants had reason to believe that it was being so used they were free to object at that time (United States v. Giglio, D.C.S.D.N.Y.1954, 16 F.R.D. 268).

Upon the trial defendants were thus aware that there was evidence which was subject to attack and that they were at liberty to attack it. This privilege they exercised even to examining the Assistant United States Attorney, whose testimony as to when and how the government first learned of the facts essential to its case defendants now claim was vital. On appeal from the conviction this court sustained the trial court's finding that there was "nothing in the record of trial suggesting any use of illegal clues" and held as to the "so-called 'tainted' evidence" that "appellants had a right of full cross-examination during the trial as to the sources of government exhibits and that they exercised this right on a number of occasions" (232 F.2d 589, 595).

The Supreme Court granted certiorari (352 U.S. 865, 77 S.Ct. 91, 1 L.Ed.2d 74) and devoted a substantial portion of its opinion (355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321) to the contention that appellants were deprived of an opportunity to examine witnesses "to determine whether evidence derived from leads and clues furnished by testimony and documents obtained from petitioners in a prior grand jury investigation was used by the prosecution at the trial * * *" (355 U.S. at page 344, 78 S.Ct. at page 315). The court reviewed all the prior proceedings directed towards the tainted evidence and held that appellants were not entitled to a full-dress preliminary hearing to ascertain whether the suppressed material had been used by the grand jury which returned the 1953 indictment.

More specifically and dealing with the examination of the former Assistant United States Attorney whose testimony is made the basis for the present proceeding, the court said that there was no basis for the contention that appellants "were denied an opportunity to show derivative use of tainted evidence by the Government at the trial" (355 U.S. at pages 357–358, 78 S.Ct. at page 322).

As a practical matter a needless burden would be placed upon the courts by the procedure suggested by appellants. They would force the government in advance to specify the testimony and each and every document it intended to use upon the trial and would have a hearing to determine the source of this potential evidence.[2] Such a hearing would be tantamount to a full-scale trial.

Upon the trial itself if evidence derived from tainted sources had been offered, counsel by *voir-dire* examination could have learned from the witness, revenue agent or otherwise, from what source he had become aware of the facts about which he proposed to testify. The

2. In United States v. Klapholz, 2 Cir., 1956, 230 F.2d 494, 497, certiorari denied 1956, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454, this court indicated that it might be better policy to decline jurisdiction over pre-trial motions to suppress "leaving the defendants free to move for suppression in the trial court." Referring to the case then before it on appeal this court said that "Such a

course would have avoided invasion of the trial court's normal province to pass on the admissibility of evidence in the trial without jeopardy to the right of the defendants to the exclusion of evidence under the McNabb [McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819] rule" (230 F.2d at pages 497–498, footnote omitted).

witness and he alone would be the person qualified to supply such information.

In view of the history of this case the statement of the same former Assistant United States Attorney falls neither into the category of newly discovered evidence (new trial) nor collateral impeachment (*coram nobis*). Nor can a single Assistant United States Attorney assigned to prepare a case for trial be the sole source of information as to the government's knowledge. When he makes an affidavit that to the best of his recollection the government had no knowledge he, of necessity, is limited to his own knowledge. When a case is tendered to a United States Attorney's Office for trial it has usually been under investigation by some one or more agencies of the government for months or years. In this very case revenue agents had been working on it for eight years before the 1953 indictment was found. Of the books and records subpoenaed only the partnership and personal records were suppressed; not the corporate.

■ Awareness of the significance of an item of proof is not synonymous with knowledge. Practical experience teaches that concentrated study and appraisal of available proof accumulated through the years invariably results in a reappraisal of the value of many evidentiary items on the eve of trial. Some items previously regarded as important may be discarded; others, possibly because trial counsel either have originally failed to grasp their significance or choose to change their trial strategy, acquire importance. Prosecution and defense alike share this experience. Only upon the trial itself can the source of any witness' knowledge with respect to proof then being offered be ascertained. If a revenue agent testifies that the subject matter of his testimony came only from a record obtained in violation of a defendant's constitutional rights it can be suppressed or stricken by the trial judge. If on the other hand he testifies that the facts were developed from records lawfully obtained a jury question may result if there be conflicting testimony. And if the records lawfully obtained contained the information or leads from which the information was subsequently obtained there would be no basis for suppression merely because the same information might also have been found in suppressed records.

■ The defendants here have been afforded every opportunity at the appropriate time, namely, upon the trial to inquire as to the source of every witness' knowledge. The district court terminated the hearing only after being satisfied that the proof relied upon by defendants was wholly insufficient. This court, the Supreme Court and the district court now on this motion have carefully reviewed this phase of the case. Defendants have had a fair trial, two appeals and a reconsideration focused upon the source of the government's knowledge. Their guilt and the fairness of the procedures which proved it have been well established.

The orders appealed from are affirmed.