**UNITED STATES of America**

v.

**Rafael E. YANES, a/k/a "Ralph"
George R. Gorski, a/k/a
"Whitey" Joseph W. Cabrera.**

**Crim. No. H–87–35 (PCD).**

United States District Court,
D. Connecticut.

Oct. 20, 1987.

Donna Fatsi, Asst. U.S. Atty., Hartford, Conn., for U.S.

Arnold B. Abrams, Abrams & Nugent, Meriden, Conn., for defendant Cabrera.

Thomas G. Dennis, Federal Defender, Hartford, Conn., for defendant Gorski.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

Defendants are charged with drug transaction violations arising out of a proposed sale of one kilogram of cocaine on April 27, 1987. Cabrera and Gorski were arrested at the point of consummation of the sale in Hartford. Yanes, a Florida resident and the alleged source or owner of the cocaine, was subsequently arrested in Florida. Pending are the following motions:

(1) By defendant Cabrera to suppress items taken from his person or from a vinyl bag after his arrest.

(2) By defendant Gorski to suppress items taken from him after his arrest.

(3) By defendant Gorski to suppress statements allegedly made by him after his arrest.

*Facts*

Defendant Gorski, as he came to be identified, was suggested by an FBI informant as of April 6, 1987, to be interested in selling cocaine. FBI Agent Foster undertook to follow up on the matter. Further information from the same source predicted that Gorski would come to Connecticut on April 16, 1987, to discuss drug transactions. Foster arranged for the person meeting Gorski to wear a transmitter and for FBI agents to monitor the meeting. As predicted, Gorski arrived in Connecticut on April 16 and his conversations were overheard to propose drug dealing. Defendant Yanes was to be the source of the drugs, which were to pass through Gorski to a buyer in Connecticut. The conversations suggested that Gorski was familiar with the sale of cocaine in large quantities and had a feasible plan for and willingness to import cocaine into Connecticut. The conversations also suggested Gorski's prior drug dealing. Gorski undertook to arrange the purchase from Yanes and delivery by a carrier from Florida to the buyer in Connecticut. The prospective buyer was to seek a price from Yanes, after which Gorski and the buyer would arrange to consummate the sale. Later, the prospective buyer talked by phone with Gorski and Yanes to firm the transaction.

On April 26, an actual date for the consummation of the sale of one kilogram of cocaine was arranged between Gorski and the buyer. On April 27, Gorski arrived. He allegedly had arranged the delivery of the drugs in the range of 5 p.m. to 6 p.m. on April 27 by a courier who was to arrive in Hartford by bus. Gorski's conversations were overheard by agents and some were recorded. As planned, Gorski met at the bus terminal a man (Cabrera) whose appearance was consistent with Gorski's earlier description of his courier. Gorski was seen to take from the man a black travel bag and the two walked to meet the buyer at his car. Agents watched the pair throughout. When the three met, they were surrounded by agents and defendants were arrested. The bag was taken by Foster and both defendants were frisked and handcuffed.

Both defendants were read their rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Both stated that they understood their rights. The travel bag was opened at the scene. No weapons were found, but a wrapped package which Foster recognized as appropriate in size and form to contain a kilogram of cocaine was found. This recognition stemmed from extensive experience with the form and manner in which cocaine has been packaged by those who deal in cocaine. The wrapped package was punctured and the contents were field tested for cocaine. Gorski and Cabrera were brought to the FBI office. Gorski originally stated he would talk later, but that he did not wish to make a statement then. About fifty minutes later, he sought to make a deal if he gave a statement, but Foster declined to do so. Gorski did not discuss the facts of the case, but did make statements concerning others allegedly engaged in drug trafficking.

No search warrants had issued. The search of the vinyl bag was regarded by the agents to be based on then-existing probable cause, as incident to a lawful arrest and as a security precaution, as warranted by exigent circumstances. Defendants were searched incidental to their arrest.

*Probable Cause*

■ Through monitoring of several of Gorski's conversations, the agents learned of a proposed drug transaction in detail. Without more, the plan was only a plan and this information alone would not have provided probable cause for the arrests, seizure and search. However, the agents' information was closely corroborated by Gorski's conduct on April 27, 1987. Specifi-

cally, at the bus station, Gorski met Cabrera, a man who fit Gorski's prior description of his drug courier; Cabrera carried a bag and Gorski brought Cabrera with the bag to meet the prospective purchaser at a point a few blocks from the bus station. The conduct of Gorski and Cabrera, down to their meeting with the prospective buyer of the cocaine, corroborated the transaction, the plan for its consummation, and the time, place and participants in the transaction. *Arkansas v. Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979); *United States v. Gonzalez*, 555 F.2d 308, 312 (2d Cir.1977). At that point, there was a reasonable basis to believe that Gorski was about to deliver a kilogram of cocaine to consummate the previously arranged sale. There was also a reasonable basis to believe that the bag contained the cocaine, evidence of the crime. Probable cause then existed and made the arrests and seizure of the bag, its contents, and the personal items on the persons of both Gorski and Cabrera lawful. *Dyke v. Taylor Implement Mfg.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); *United States v. Nersesian*, 824 F.2d 1294, 1317 (2d Cir. 1987).

### Exigent Circumstances

The government must justify the search of the bag without a warrant under the prevailing circumstances. An immediate search of the bag would be permitted if exigent circumstances existed. *Sanders*, 442 U.S. at 763 n. 11, 99 S.Ct. at 2593 n. 11; *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). A warrant was not readily available. Nor could the

agents have been prepared with a warrant. Until Cabrera arrived by bus and met Gorski, he could not have been identified, nor was the bag's existence and relevance known. It was Cabrera's arrival and the transfer of the bag to Gorski which confirmed the information the agents had from Gorski. As analyzed above, only at that point did probable cause exist for believing that the bag contained the cocaine to be sold.[1]

As personal luggage, the bag was subject to the limitations of the fourth amendment. *Sanders*, 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13.[2] In *Sanders*, the Court rejected the warrantless search of a drug courier's luggage taken by police from the trunk of the courier's taxicab. Despite the existence of probable cause to believe that the courier's suitcase contained marihuana, a fact which made the seizure lawful, *id.* at 761, 99 S.Ct. at 2591; *Chambers*, 399 U.S. at 50, 90 S.Ct. at 1980, a search must be independently justified by an exception to the warrant requirement. *Sanders*, 442 U.S. at 766, 99 S.Ct. at 2594. That the seizure was lawful did not make the search lawful. "We are not persuaded ... that under *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), if the police were entitled to seize the suitcase, they were entitled to search it." *Id.* at 765 n. 14, 99 S.Ct. at 2594 n. 14. There is a "significant difference between the seizure of a sealed package and a subsequent search of its contents." *United States v. Ross*, 456 U.S. 798, 812 n. 16, 102 S.Ct. 2157, 2166 n. 16, 72 L.Ed.2d 572 (1982). Exigent circumstances could justify a warrantless search. *Sanders*, 442 U.S. at 763 n. 11, 99 S.Ct. at 2593 n. 11.

1. The existence of probable cause thus distinguishes this case from *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), which dealt with the seizure of luggage during a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Place*, the Court held that, although police have "narrow authority ... to *detain* briefly luggage *reasonably suspected* to contain narcotics," 462 U.S. at 710, 103 S.Ct. at 2646 (emphasis added), a delay of ninety minutes to seek a search warrant was too long. Here, probable cause was present and the agents were authorized to seize, and not merely

briefly "detain," the travel bag for further investigation. *Place*, 462 U.S. at 701, n. 3, 103 S.Ct. at 2641, n. 3, quoting *Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979); *see Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

2. *Sanders* did not determine the requirement of a warrant for a luggage search incident to a lawful arrest. 442 U.S. at 764 n. 11, 99 S.Ct. at 2593 n. 11; *see United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

Exigent circumstances are one of the few "jealously and carefully drawn" exceptions to the need for a search warrant which are limited to "those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence outweigh the reasons for prior recourse to a neutral magistrate." *Id.* at 759, 99 S.Ct. at 2591; *United States v. United States District Court,* 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972). The question here "is whether the [agents], rather than immediately searching the suitcase without a warrant, should have taken it, along with respondent, to the police station and there obtained a warrant for the search." *Sanders,* 442 U.S. at 762, 99 S.Ct. at 2592. Where " 'there was not the slightest danger that [the luggage] or its contents could have been removed before a valid search warrant could be obtained,' " *id.,* quoting *United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977), the exemption from the need for a warrant is not present. In this instance, the mobility of the bag, its proximity to the defendants, the fact that the events took place on the open street, and the presence of Cabrera are all factors that must be considered in determining the presence of exigent circumstances. "[T]he exigency of mobility must be assessed at the point immediately before the search—after the police have it securely in their control." *Sanders,* 442 U.S. at 763, 99 S.Ct. at 2593.

The bag belonged to Cabrera. It was turned over to Gorski.[3] At the scene of the arrest, it had been taken from Gorski, both defendants were placed under arrest and handcuffed, and the bag was placed on the ground, all in the presence of several agents, all of whom had their guns drawn. The bag was thus not accessible to either defendant. It was not mobile in the sense that the bag was going nowhere other than with the agents to the Federal Building. There was neither a risk of a defendant getting to a weapon in the bag nor a risk of a defendant destroying or absconding with evidence from the bag. Though the government argues that the search was lawful as incident to the arrests, presumably as a security procedure, that claim cannot stand. The facts at the time of the search suggest no exigency in the form of a risk of either harm to the agents or loss of evidence. While it may seem harsh that a slight change of facts might affect the result here, "an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights." *Id.* at 757, 99 S.Ct. at 2589. Once the bag was removed from defendants' access or control, the noted risks, which might otherwise have justified a warrantless search, *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Robinson,* 414 U.S. 218, 94 S.Ct. 467, evaporated and vitiated the basis on which lack of a warrant would have been excused.[4]

The case was no longer within an exception to the warrant requirement of the fourth amendment which requires probable cause *and* a warrant. The blanket exception to the need for a warrant in automobile searches, based on their mobility, is not to be extended "to any movable container found in a public place," the practical problem of detaining luggage while getting a search warrant being "significantly less than those associated with the detention of an automobile." *Ross,* 456 U.S. at 811, 812, 102 S.Ct. at 2165, 2166. Detention of a

---

**3.** Cabrera thereby depleted, if not destroyed, his ability to preserve his claim of a reasonable expectation of privacy. This does not alter the case, as any container remains subject to the protection of the fourth amendment and the warrant requirement. *Chadwick,* 433 U.S. 1, 97 S.Ct. 2476; *Ross,* 456 U.S. at 812, 102 S.Ct. at 2166. Thus Cabrera retained standing to object to the search. The bag was in the possession of Gorski. He retains standing as he is charged with crimes of which an essential element is possession of the cocaine found in the bag, even though the bag was not his and thus he had no expectation of privacy in it by ownership.

**4.** *Sanders* affirmed the Arkansas Supreme Court, which found that "a warrantless search required probable cause and exigent circumstances," and, where the bag was in police control, there was no exigent circumstance and no "impracticality in obtaining a search warrant." *Sanders v. Arkansas,* 262 Ark. 595, 599, 559 S.W.2d 704, 706 (1977).

package for a reasonable period of time to get a search warrant, and where no search has been performed in the interim, is lawful. *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed. 282 (1970).

As no obstacle to the acquisition of a search warrant was shown, and the party claiming the exception has the burden "to show the need for it," *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), the search of the bag at the scene was unlawful. Probable cause is a ground (and necessity) for a search of a container, but by itself is not grounds for a warrantless search. Apart from probable cause, a warrantless search must come within one of the exceptions to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2418, 57 L.Ed.2d 290 (1978); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The search of the persons of Gorski and Cabrera as incident to a lawful arrest was lawful. *Robinson*, 414 U.S. 218, 94 S.Ct. 467.

The claim that the warrantless bag search can be vindicated as an inventory search has no merit. No such claim was made as the basis for the search by the agent involved. Further, this was not a search done with an inventory immediately prepared. There is an administrative procedure with respect to arrested suspects whereby an inventory search at the agency office results in a listing of the personal property taken from them. Such a procedure is not dependent on probable cause, is not subject to the fourth amendment requirements, and is lawful. *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983). By itself, *Lafayette* cannot sustain the search here, as it was not performed pursuant to such an administrative procedure.

If a source of the information/material, independent of the unlawful search, can be shown, then the exclusionary rule has been held to be inapplicable. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963); *Nix v. Williams*, 467 U.S. 431, 434, 104 S.Ct. 2501, 2504, 81 L.Ed.2d 377 (1984).

In addition, there is the inevitable discovery rule. *Nix*, 467 U.S. at 443–44, 104 S.Ct. at 2508–09; *United States v. Silvestri*, 787 F.2d 736 (1st Cir.1986). The exclusionary rule is intended to prevent the government from being better off as a result of unlawful activity, but it was not intended to cause the government to be worse off as a result. As the independent source rule only applies where a separate avenue of investigation has been pursued and has resulted in a lawful acquisition of the evidence, *see Segura v. United States*, 468 U.S. 796, 814–15, 104 S.Ct. 3380, 3390–91, 82 L.Ed.2d 599; *Nix*, 467 U.S. at 443, 104 S.Ct. at 2508, and as these factors are not present in this case, the government's only salvation is the inevitable discovery rule.

Exclusion is intended to preclude law enforcement officers from enhancing the prosecution by unlawful means. It is not, however, a shield to the wrongdoer, who is not to be put beyond the reach of the law when guilt can be shown by evidence lawfully obtained. *Sutton v. United States*, 267 F.2d 271 (4th Cir.1959). Where a valid basis for lawful acquisition of evidence exists before the unlawful search, then the illegality is not the but for cause for the acquisition. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407. Thus, the view has been adopted that precludes penalization of the government for the illegality in the sense that the rule is not to be applied to put the government in a worse position by reason of the illegality, but rather it is merely to nullify the unlawful acquisition. It follows that the existence of an independent basis for acquiring the information, not dependent upon the illegality, would permit use of the evidence on the theory that the deterrent purpose of exclusion is not justified in the face of the cost to society in its proper law enforcement rule if evidence lawfully acquired were to be excluded. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The balancing in these cases requires close scrutiny. *United States v. Giglio*, 263 F.2d 410 (2d Cir.1959).

The inevitable discovery rule differs from the independent source exception

because it applies where the evidence is not discovered independently, but would be. However, the same rationale supports the two doctrines: where there is a reasonable probability that evidence would have been discovered independently of the illegal actions, the policies of the exclusionary rule are not compelling. Thus, procedures which can be shown to be going to occur or would occur had the illegal acquisition not taken place and which would have brought the evidence lawfully into the government's hands sufficiently remove the taint of the actual, unlawful acquisition as to permit admissibility.[5] *See* LaFave, *Search and Seizure*, at 383 n. 73.

■■■ As noted, defendants' arrests are not challenged and are thus presumed to have been lawful. An inventory search of the property of an arrested person is a routine procedure. *United States v. Woolbright*, 641 F.Supp. 1570 (E.D.Mo.1986). Had the bag remained intact after the arrest, its contents would have been disclosed at the inventory. That process clearly would have occurred and it was not dependent upon, nor would it have been brought about by reason of, nor would it have followed upon (except in time), the illegal search. *See United States v. Pimentel*, 810 F.2d 366, 369 (2d Cir.1987) (existence of ongoing audit procedure which would have discovered evidence); *United States v. Cherry*, 759 F.2d 1196, 1204 (5th Cir.1985). An inventory which would have disclosed and yielded the contents of the bag is sufficiently removed from speculation to be inevitable. Such an inventory would have lawfully put the government in possession of the bag, with full knowledge of its contents and they need not, therefore, be suppressed. *United States v. Andrade*, 784 F.2d 1431 (9th Cir.1986); *Woolbright*, 641 F.Supp. 1570; *District of Columbia v. M.M.*, 407 A.2d 698 (D.C.App.1979); *Carlisle v. State*, 98 Nev. 128, 642 P.2d 596 (1982); *Clough v. State*, 92 Nev. 603, 555 P.2d 840 (1976); *cf. United States v. Allen*, 436 A.2d 1303 (D.C.1981) (no showing that inventory was an established practice in the type of case involved, thus no validation by an inevitable discovery).

■■■ Lest the government discern an easy method for validating the results of an unlawful search, the government may not by-pass the warrant requirements and then mechanically rely on the inventory as inevitable to meet its burden of showing an inevitable, lawful discovery. *See United States v. Amuny*, 767 F.2d 1113 (5th Cir.), *reh'g denied*, 775 F.2d 301 (5th Cir.1985). Such knowing reliance might well taint the search, making the deterrence rationale of the exclusionary rule applicable despite the existence of independent inventory procedures. The inevitable discovery rule is not to be the means of obviating the warrant requirement. *United States v. Griffin*, 502 F.2d 959 (6th Cir.1974); *United States v. Satterfield*, 743 F.2d 827 (11th Cir.1984). When exigent circumstances do not exist and a container has been lawfully seized, it should be the subject of a search warrant properly obtained. A further caution—an inventory is not a search, it is an accounting of all of an arrested person's property. It is not an alternative to, nor may it be a pretext for, a search and thus, if the clear purpose for opening a bag at the agency office is to search for suspected evidence, the opening will be subject to the warrant requirement and not excused from that requirement under the cloak of a claimed inventory.

Accordingly, the motions of Gorski and Cabrera to suppress items taken from them and from the bag are denied.

*Motion to Suppress Statements*

■■■ Defendant Gorski has also moved to suppress certain statements he made to the agents after his arrest. Gorski was read his rights, which he understood. That Gorski understood these warnings was shown by his initial refusal to make any statements, stating his intention not to do so, although he did not request an attorney. Later, voluntarily and in an exchange which was not initiated by any questions

---

**5.** The facts here clearly demonstrate the inevitability of the inventory discovery of the evidence after a lawful search, thus establishing the reasonable probability of the discovery which was the concern of Oakes, J., in dissent in *United States v. Falley*, 489 F.2d 33 (2d Cir.1973).

asked of him, Gorski sought to arrange a deal for himself in relation to the charges. Because these statements were voluntary, there was no violation of Gorski's rights in the statements he made. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).

Accordingly, his motion to suppress statements is denied.

SO ORDERED.