# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 1410016737
)
ANDREW LLOYD )
)
Defendant. )

Submitted: April 4, 2019
Decided: May 20, 2019

## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Mark Denney, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Julianne E. Murray, Esquire, Murray, Phillips & Gay, Attorney for Andrew Lloyd.

**MAYER,** Commissioner

1

This 20th day of May, 2019, upon consideration of Defendant's Motion for Postconviction Relief, the following is my Report and Recommendation:

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

In January of 2014, the Wilmington Police Department and Federal Bureau of Investigation began investigating Andrew Lloyd ("Defendant") with respect to suspected illegal dealing of heroin.[1] Independently, the Delaware State Police and U.S. Drug Enforcement Administration ("DEA") were also investigating Defendant for suspicious activities. When law enforcements' paths crossed, they agreed to work jointly to advance their consistent interests.

During the course of the investigation, law enforcement came to understand that Defendant was the leader of a large-scale drug operation. It was also believed that he was moving an average of 1,000-1,600 bundles of heroin per week. Defendant primarily used others to store, package and distribute heroin for him and they used false names to hide the identity of their associates and the location of homes.

The New Castle County Grand Jury eventually issued a final 163-count indictment that involved over forty (40) co-defendants and specifically charged Defendant with numerous felony offenses.

---

[1] The facts set forth herein are primarily taken from the Delaware Supreme Court's decision on appeal found at *Lloyd v. State*, 152 A.3d 1266 (Del. 2016).

On November 26, 2014, Peter Veith, Esquire ("Trial Counsel") was appointed to represent Defendant. In 2015, Defendant sent several letters to the Court advocating for suppression of certain wiretap evidence.[2] Pursuant to Superior Court Criminal Rule 47, the trial judge forwarded the letters to Trial Counsel.[3] In doing so, the trial judge also addressed several cases Defendant believed supported his position. The October 6, 2015 letter (hereinafter the "2015 Letter") states in part:

> As a courtesy and to help you with your discussion, attached are copies of the trial and appellate courts' decisions in *U.S. v. Yanes*.[4] Defendant highlights a seemingly favorable snippet from the trial court's decision in *Yanes* concerning the warrantless, post-arrest search of a bag. Of course, *Yanes* has nothing to do with collecting evidence during an investigation, much less a wiretap, which is what this case concerns. While an arrest, like the arrests in *Yanes*, has to be supported by probable cause to believe a crime *has been* committed,[5] a wiretap is issued on probable cause to believe, among other justifications, that a crime is *about to be* committed.[6] In other words, a wiretap only needs reason to believe a crime is being planned.

---

[2] Trial Counsel also assisted Defendant with filing a direct appeal to the Delaware Supreme Court. Once again, Defendant circumvented his counsel and filed letters with the Supreme Court advocating for consideration of the issues relating to suppression of the wiretap. The Supreme Court sent the letters to Trial Counsel to address but it does not appear as if this issue was presented to the court.

[3] D.I. # 35.

[4] *United States v. Yanes*, 671 F. Supp. 927 (D. Conn. 1987); *United States v. Gorski*, 852 F.2d 692 (2d Cir. 1988).

[5] *Id.*

[6] *See* Clifford S. Fishman & Anne T. McKenna, Wiretapping and Eavesdropping 8-67 (Thomson West eds., 2nd ed. 2004).

> Perhaps you can explain to your client why *Yanes* is not helpful to him. You might also explain the significance of the police surveillance here. If he will not take your word for it, let me know. But, I expect you to reason with your client first.
>
> Meanwhile, it does not appear that your client realizes how serious his predicament is and how it gets worse with each co-defendant's guilty plea. As a reality check, I will ask the State to present its current case in a nutshell at the final case review, with emphasis on what is left if the wiretap, somehow, were suppressed. My understanding is that the State's position is qualitatively different now, compared to when your client was arrested. [7]

In the meantime, due to safety concerns with witnesses, Defendant was housed at Sussex Correctional Institution, approximately a 2-hour drive from New Castle County where Trial Counsel was located. Trial Counsel filed a Motion to Transfer Defendant because although he had made in person visits and conducted video-conferencing, he needed Defendant to be housed locally during trial to avoid the delays from transport and to allow more time for preparation of the case.

On October 7, 2015, the Court held a Final Case Review hearing. [8] The trial judge went through great pains to ensure Defendant understood the pending charges, the State's evidence and the potential penalties if convicted. The State summarized its evidence (separate and apart from the wiretap) as including: (1) the expected

---

[7] D.I. # 35 (emphasis in original).

[8] *See* Transcript of Final Case Review, hereinafter referred to as "FCR Trans."

testimony of numerous co-defendants who would acknowledge the racketeering enterprise with Defendant or pled to drug conspiracy with Defendant; (2) affirmative statements that point with specificity to the history and methodology of Defendant's drug trafficking operation; (3) testimony that Defendant directed shootings, heroin trades, and trafficking from Philadelphia to Wilmington; (4) police officers testifying to observing drug deals with Defendant over time; and (5) video surveillance of illegal activity.[9]

On that same date, Defendant rejected a plea offer. Through that offer, the State recognized that Defendant faced a minimum sentence of 10 years of Level V incarceration, and the State agreed not to seek more than 25 years at the time of sentencing.

On October 20, 2015, the case proceeded to an eight-day joint trial for Defendant and a co-defendant. The State presented over fifty (50) witnesses including the testimony of seventeen (17) co-defendants. As part of its case, the State also introduced over one-hundred and seventy (170) pieces of evidence, including hours of recorded wiretap phone calls. The State sought to prove that Defendant was the head of a criminal enterprise that involved drug dealing and

---

[9] FCR Trans. at pgs. 5-7, 9, 17-18.

violence. Defendant was convicted of all charges. Defendant filed an appeal and his conviction was affirmed.[10]

On February 21, 2017, Defendant filed a Motion for Postconviction Relief. Counsel was appointed and given leave to amend. An Amended Motion for Postconviction Relief was filed (the "Motion"), presenting two grounds for relief: (1) Trial Counsel was ineffective because he failed to substantively communicate with Defendant prior to trial; and (2) Trial Counsel was ineffective because he failed to move to suppress the wiretap evidence.[11] Trial Counsel submitted an Affidavit and attests that he regularly communicated with Defendant to discuss his case, and because he believed a motion to suppress lacked merit, he would not file a frivolous motion.[12] The State submitted a Response.[13] The State believes Trial Counsel "put forth a strong defense despite overwhelming evidence" and if a motion to suppress had been filed, it would have failed. Defendant submitted a Reply Brief[14] creating a factual dispute regarding the extent of communications and again attacking the admissibility of the wiretap evidence. An evidentiary hearing was held on April 4,

---

[10] *Lloyd v. State*, 152 A.3d 1266 (Del. 2016).
[11] D.I. # 104.
[12] D.I. # 106.
[13] D.I. # 108.
[14] D.I. # 109.

2019 (the "Hearing").[15] After having considered the entire record in this matter, the briefing from the parties, and the evidentiary record,[16] I recommend that the Motion be denied.

## LEGAL ANALYSIS OF CLAIMS

Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the Motion.[17] This is Defendant's first motion for post-conviction relief and it was timely filed.[18] Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction

---

[15] At the Hearing, the Court found that Defendant waived any attorney-client privilege or work product protection with regard to communications or materials specifically relevant to his claims. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 80(1)(b) & cmt. C (2000) ("A client who contends that a lawyer's assistance was defective waives the privilege with respect to communications relevant to that contention. Waiver affords to interested parties' fair opportunity to establish the facts underlying the claim."); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 2008 WL 498294 (Del. Super. Jan. 14, 2008), at *4 (waiver of privilege when client puts attorney-client relationship at-issue).

[16] References herein to the Hearing exhibits will be made by citing to the appendix identification given at the time of the Hearing, *e.g.* "A___." References to the Hearing Transcript will be made by citing "Hearing Trans. at ___."

[17] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[18] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(2) (If the defendant files a direct appeal, the judgment of conviction becomes final when the mandate is issued).

proceeding, or in a federal habeas corpus proceeding, are thereafter barred. However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[19]

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and the deficiencies in counsel's representation caused the defendant actual prejudice.[20] The court must be persuaded that the alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment.[21] Further, in order to prevail on an ineffective assistance of counsel claim, a defendant must show that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different.[22] The test is not whether the Defendant can demonstrate that the error had some "conceivable effect" on the outcome but rather whether the error undermined

---

[19]  *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[20]  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).
[21]  *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super., May 23, 2012).
[22]  *Strickland*, 466 U.S. at 687-88, 694; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

the reliability of the result of the proceeding.[23] Defendant must overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[24] Mere allegations of ineffectiveness or conclusory statements will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[25]

## LEGAL ANALYSIS OF CLAIMS

### I.    Defendant's First Claim for Relief Should be Denied

Defendant first argues that his constitutional rights were violated because Trial Counsel failed to substantively communicate with him prior to the trial. At the Hearing, this was flushed out more and although there is a sufficient record of letters, phone calls, video conversations, and in person visits, Defendant claims Trial Counsel did not apprise him of certain significant evidence to enable him to make a knowing and intelligent decision to plea or go to trial.

Defendant's complaints can be summarized in three categories: (i) a belief that the wire-tap evidence should have been suppressed; (ii) his lack of knowledge of the witness statements and testimony that would be elicited at trial; and (iii) his contention that he would have accepted a more favorable plea if he had been better

---

[23] *Strickland*, 466 U.S. at 693.

[24] *State v. Wright*, 653 A.2d 288, 293-94 (Del. Super. 1994) (citations omitted).

[25] *Strickland*, 466 U.S. at 687-88, 694; *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)).

informed.  For the reasons set forth in Section II below, I do not believe Trial Counsel erred in failing to move to suppress the wire-tap evidence.  The other two complaints will now be taken in turn.

## A.    Trial Counsel Substantively Communicated with Defendant

A review of the record, as well as the testimony and exhibits presented at the Hearing demonstrates that Trial Counsel was first introduced to Defendant in November of 2014.  From the date of appointment until trial commenced, the record reflects approximately ten (10) in-person meetings, telephone conferences or video conferences.[26]  Defendant acknowledges that Trial Counsel sent him eleven (11) letters prior to trial, but claims the content was brief or non-substantive.  Defendant also puts great emphasis on the twenty-one (21) letters that he wrote to Trial Counsel that may or may not have received full attention.

I disagree with Defendant's interpretation of the exchange of information. The letters demonstrate efforts by Trial Counsel to provide Defendant with copies of the re-indictment, wiretap intercepts from October 10, 2014 through October 24, 2014, two separate phone wiretap intercepts from August 29, 2014 to November 18,

---

[26] According to Trial Counsel's Affidavit and testimony, Defendant may have also accessed a cell phone while incarcerated and placed calls to counsel with that device. Trial Counsel advised Defendant that doing so could subject him to additional criminal charges. *See* Hearing Trans. at pg. 61.  Further, not all telephone calls were depicted in the time records.  If the call was under 15 minutes, Trial Counsel would not bill for the time.  Hearing Trans. at pg. 73.

2014 and October 21, 2014 to November 24, 2014, case law regarding jury instructions, Defendant's transcribed statement, multiple plea offers, DEA reports, the State's supplemental discovery including transcripts from co-defendant suppression hearings, and jury instructions. Trial Counsel also engaged Defendant in discussions relating to the seriousness of the felony drug offenses, the significant minimum/mandatory time, possible defenses, potential defense witnesses, plea offers and possible sentences, the assistance of a private investigator, the re-indictment with an explanation of charges, and the relevancy of the wiretap intercepts.[27]

Effective representation by trial counsel requires "adequate investigation and pre-trial preparation."[28] Trial Counsel was well versed in the facts and legal issues surrounding Defendant's case.[29] And, despite Defendant's accusations, Trial Counsel was far from idle. The time records reflect Trial Counsel expended more than 400 hours reviewing potential evidence, plea offers and legal issues. Trial

---

[27] *See* Exhibits A48-A71.

[28] *Gattis v. State*, 697 A.2d 1174, 1184 (Del. 1997), citing *Riley v. State*, 545 A.2d 719, 727 (Del. 1990) (quoting *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir. 1984)).

[29] This case is easily distinguishable from *Cronic* because Trial Counsel did not "entirely fail[] to subject the prosecution's case to meaningful adversarial testing." *Florida v. Nixon*, 543 U.S. 175, 190 citing *United States v. Cronic*, 466 U.S. 648 (1984); *Moody v. State*, No. 570, 2017 (Del. Sept. 24, 2018) (distinguishing *Cronic* when allegations are limited to counsel's failure to file a motion).

Counsel made several attempts to convince Defendant that the evidence was weighted against him, and what the co-defendants were saying in cooperating with the State.[30] For example, in September of 2015, Trial Counsel forwarded a copy of Defendant's transcribed statement and advised:

> While you do not find it to be problematic I do. Based upon your statement and that of the cooperating co-defendants, the State has a strong racketeering case. Additionally, your statement concerning dealing with defendant Roscoe are problematic and can result in you being convicted of those charges...[31]

Defendant's view was that no one would testify against him, and he preferred to focus on attacking the wiretap evidence.[32] Defendant's choice to ignore critical evidence and Trial Counsel's advice, cannot now support a claim of ineffective assistance of counsel.

**B.      Defendant Was Informed of the Risks of Trial Prior to Rejecting the Plea**

With respect to the issue of the plea negotiations, the record reflects Defendant's rejection of an offer on October 7, 2015, after the Final Case Review Hearing and after the Court directed the State to summarize its case on the record. The Court's intent was to ensure Defendant was fully aware of the State's case, separate and apart from the wiretap evidence. The State complied and at the

---

[30]  *See* Hearing Trans. at pgs. 20-21, 22, 24-25, 38, 56.
[31]  *See* A54.
[32]  *See* Hearing Trans. at pgs. 20-21, 38, 57.

conclusion of the hearing, the Court addressed Defendant directly. Defendant was advised that he was in a difficult situation. Despite the lengthy recitation of witness testimony and evidence, and the Court's suggestion, Defendant rejected the plea offer.

At the Hearing, the parties agreed that another plea was offered that would have included a recommendation of 8 to 22 years at Level V.[33] This offer was also made after the Final Case Review Hearing, and again, Defendant was fully apprised of the weight of the evidence when he elected to reject that plea.[34]

Although Defendant claims he would have accepted a more favorable plea if he had been better informed, he has repeatedly stated throughout his letters to Trial Counsel and the Court, as well as at the Hearing, that no one knew his case as well as he did. Defendant's letters reflect a detailed understanding of potential witness testimony, statements, evidence and legal issues.[35] For example:

- Defendant's sophistication is evident from his preparation of legal arguments relating to "corpus delicti," writs of mandamus, motions to compel, motions to suppress, etc.

- Defendant independently researched legal authority in support of his case, cited that authority, and suggested a *"Flowers"* motion or *"Franks"* hearing.

---

[33] Hearing Trans. at pg. 82.

[34] Defendant testified that the offer was made "[a]round trial prep, like three days before trial, something around there." Hearing Trans. at pgs. 82-83. The State agreed that the offer was relayed after final case review and before trial. Hearing Trans. at pgs. 120-121.

[35] *See* A72-A141.

- Defendant specifically cited the Superior Court Rules that may assist with his defense.

- Defendant received, reviewed and analyzed the evidence provided to him including the wiretap transcripts, affidavits in support of application for interception of wire communications, and affidavits of probable cause.

- Defendant discussed certain case law with his Trial Counsel.

Trial Counsel's time records show that in September of 2015, he met with the client and "review[ed] co-def. statements."[36] However, at various points in time, Defendant indicated he was not interested in reading certain transcripts, or discussing a plea, rather he wanted to prepare for trial.[37]

Moreover, although Defendant argues he was unaware of "key" witness statements and the content of the testimony, the State's summary is more convincing: (1) Defendant had seven (7) months before trial to review the Jarrell Brown transcripts; (2) Steven Roscoe's critical testimony was referenced in Trial Counsel's letters; (3) Demetrius Brown was a lengthy proffer, and there are two separate dates of Trial Counsel reviewing the proffer and the statement was given to the Defendant before the Final Case Review Hearing; and (4) both Brian Miller's

---

[36] *See* A15.
[37] *See e.g.* A80, A89.

and Collins's testimony were referenced/previewed at the Final Case Review Hearing.[38]

In light of the above, it is evident that Trial Counsel, with the Court's assistance, went to great lengths to afford Defendant an opportunity to accept the overwhelming amount of evidence he was facing. Defendant elected to disregard that advice. Trial Counsel will not be deemed ineffective when the record demonstrates that the choice to not enter into a plea was wholly within Defendant's knowing and intelligent decision-making.

## II. Trial Counsel Did Not Err in Neglecting to File a Motion to Suppress

Defendant next argues that Trial Counsel was ineffective for failing to file a motion to suppress and focuses on the bases to undermine the affidavit and resulting evidence. Essentially, Defendant argues that the State could not show "necessity" for each wiretap obtained. An application for a wiretap will be granted if:

> 1) there is probable cause to believe that a person has committed, is committing, or is about to commit an enumerated crime; 2) there is probable cause to believe that communications concerning the enumerated offense will be obtained through the wire intercept; 3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if attempted or would be too dangerous; and 4) there is probable cause to believe that the telephone number from which communications are being intercepted

---

[38] *See* Hearing Trans. at pgs. 124-128.

are being used in the commission of an enumerated offense or are used by an individual engaged in criminal activity.[39]

In moving to suppress the resulting evidence, a defendant must prove by a preponderance of the evidence that given all of the circumstances set forth in the affidavit, the court erred in granting the application.[40] However, a judge's determination of probable cause is to be paid great deference by any reviewing court.

Defendant argues that the wiretap application for his phone line mostly duplicated the application for Brown's wiretap or was conclusory in nature. As such, Defendant believes the application failed to satisfy the requirement of necessity. Defendant then argues that he was prejudiced because most of the evidence elicited at trial resulted from the illegal wiretaps.

Although Defendant attacks the wiretap application and resulting evidence, he cannot directly argue the inadmissibility of this evidence because any such claim is deemed waived for his failure to raise it during the trial proceedings or on appeal.[41] Alternatively, Defendant argues Trial Counsel was ineffective for failing to file a motion to suppress this same evidence.

---

[39] *State v. Felton*, 2016 WL 3568523, at *12 (Del. Super. June 22, 2016), citing 11 Del. C. §2407.
[40] *Id.*
[41] *See* Super. Ct. Crim. R. 61(i)(3) barring any ground for relief that was not asserted in the proceedings leading to the judgment of conviction unless the movant shows cause for relief and prejudice from a violation of his rights.

At the Hearing, the parties were asked to address the 2015 Letter whereby the trial judge analyzed and responded to Defendant's suppression arguments. Defendant could not identify any legal error in the trial judge's decision-making. Therefore, the ultimate question here is whether Trial Counsel's failure to file a motion to suppress, in consideration of the trial judge's thoughts on the matter, was objectively reasonable. For several reasons, the answer is "yes."

Trial Counsel's time records show that he researched the suppression issues and considered whether a motion should be filed.[42] Ultimately, he decided any such motion would be frivolous and he informed Defendant that there was no merit to filing a motion to suppress.[43] It appears the trial judge agreed. Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[44] In fact, Trial

---

[42] *See* A11 (1.25 hours for research relating to DEA informant); A14 (3.75 hours reviewing wiretap warrants and preparation for consult) (5.5 hours' video consult [with client] and research warrants/statutes).

[43] Hearing Trans. at pgs. 39-40. The State also points out that forty-six (46) co-defendants who were impacted by the wiretaps did not file a motion to suppress. Hearing Trans. at pg. 136.

[44] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super., Feb. 26, 2013). *See also, Florida v. Nixon*, 543 U.S. 175, 187 (counsel has duty to consult with client regarding important decisions, but is not required to obtain defendant's consent to every tactical decision); citing *Strickland*, 466 U.S., at 688; *Taylor v. Illinois*, 484 U.S. 400, 417–418 (1988).

Counsel had an obligation not to file frivolous motions.[45] Defendant, having been unable to successfully contradict the reasoning set forth in the 2015 Letter, is now unable to carry his burden that Trial Counsel's actions were in error.[46]

Further, an independent review of the legal issues presented demonstrates that it is unlikely a motion to suppress would have been successful. According to Trial Counsel, Defendant was very conscious of police surveillance and would use counter-surveillance measures, such as using a rental car and driving erratically, to avoid detection. Although there were two separate, but parallel, investigations, law enforcement were unable to build a strong case against Defendant and when his voice was recognized on a call with Brown, they applied for and received a wiretap of three separate phones related to Lloyd. The State summarized the investigation techniques that were unsuccessful and the profiles of the confidential informants.

Trial Counsel agreed that the affidavit "articulated that they weren't able to get close to him," the normal investigative techniques that were not fruitful, and that the affidavit referenced the confidential informants as past proven and reliable.[47]

---

[45] *State v. McGlotten*, 2011 WL 987534, at * 5 (Del. Super. Mar 21, 2011), citing *State v. Pandiscio*, 1995 WL 339028, * 5 (Del. Super. May 17, 1995), *aff'd*, 1995 WL 715627 (Del. Oct. 25, 1995).

[46] The trial judge's letter was not a formal order or opinion and therefore the claim was not formerly adjudicated and barred by Super. Ct. Crim. R. 61(i)(4). However, it provided the parties with insight into the judge's impression of the issue and that the likelihood of success was poor.

[47] Hearing Trans. at pgs. 41, 48-49, 51.

The Application for Interception of Wire Communications was eighty (80) pages in length and included: (a) an explanation of the various individuals, their relationship to each other and criminal history; (b) specific conversations between Defendant and others that purportedly discussed illegal drug dealing activity; (c) profiles of the confidential informants and that one had personal knowledge of Defendant and Brown facilitating heroin transactions and assisted law enforcement with the purchase of heroin directly from Brown; (d) a summary of the detective's two year history included fifty (50) encounters with Defendant; (e) an explanation of why and how Defendant switched phones; and (f) an explanation of why traditional investigative procedures have been tried and failed, are reasonably unlikely to succeed, or are too dangerous to employ.[48]

The State sufficiently demonstrated that alternative means of investigation were not likely to succeed. Defendant had engaged in evasive activities including switching phones, using coded language, and evading other typical surveillance.[49] Although the Application may have, in part, been duplicative of applications submitted with respect to certain co-defendants, the Application also included

---

[48] *See* Defendant's Appendix to Amended Motion for Postconviction Relief and Opening Briefing Supporting Motion at A303-A383; State's Exhibit 1 at Hearing.
[49] *See e.g. U.S. v. Abascal*, 564 F.2d 821, 826 (9th Cir. 1977) (affidavit sufficiently described defendant's suspicion of surveillance and attempts to avoid dealing directly with drug sources).

specific facts related to Defendant, when considered in its entirety – and separately from the others – sufficiently met the necessity requirement.[50]

If the Court determines there was no attorney error, the Court need not address the prejudice part of the *Strickland* standard.[51] However, to ensure completeness, I have examined the second factor as well. The State suggests the Court focus on the strength of the evidence beyond the wiretap(s). Defendant was initially indicted and arrested without reference to the wiretap. "At the trial, over fifty witnesses testified for the State, including seventeen of Lloyd's co-defendants, twenty-seven law enforcement officers, several expert witnesses, a civilian, and Lloyd's former cellmate."[52] Witnesses testified to drug deals with Defendant, a search warrant of Defendant's residence led law enforcement to cash hidden in a freezer and car, Defendant provided a videotaped confession to the DEA, and there was video surveillance of Defendant at Delaware Park receiving a large sum of money. The evidence, above and beyond the wiretaps, was more than sufficient to result in a conviction for one or more of the significant offenses for which Defendant was charged. In consideration of the trial judge's suppression letter, and the weight of the evidence, Defendant has not established a reasonable probability that the

---

[50] *See State v. Felton*, 2016 WL 3568523, at *12 (Del. Super. June 22, 2016) (analyzing affidavit that incorporated previous application).
[51] *See Strickland*, 466 U.S. at 700.
[52] *Lloyd v. State*, 152 A.3d at 1269.

outcome would have been different if the motion to suppress had been filed and/or if the evidence had been suppressed. Defendant's claim of ineffective assistance of counsel fails because he cannot demonstrate that lack of preparation or action by Trial Counsel "caused the jury to reach a verdict it would not otherwise have reached."[53]

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Katharine L. Mayer

cc:   Original to Prothonotary
Mark A. Denney, Deputy Attorney General
Julianne E. Murray, Esquire
Peter W. Veith, Esquire
Andrew J. Lloyd (SBI 00337996)

---

[53] *Gattis v. State*, 697 A.2d 1174, 1186 (Del. 1997).