IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW LLOYD, | § | |
| | § | No. 680, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1410016737 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 25, 2016
Decided: December 20, 2016

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

Upon Appeal from the Superior Court of the State of Delaware: **AFFIRMED**.

Peter W. Veith, Esquire *(Argued)*, Wilmington, Delaware, for Defendant-Below, Appellant, Andrew Lloyd.

Elizabeth R. McFarlan, Esquire *(Argued)*, Department of Justice, Wilmington, Delaware, for Plaintiff-Below, Appellee, State of Delaware.

**SEITZ**, Justice:

# I.    Introduction

Andrew Lloyd appeals his convictions for racketeering and other offenses related to his role in a Delaware heroin trafficking ring. He raises four issues on appeal. First, Lloyd argues that the Superior Court abused its discretion by giving a jury instruction that did not adequately define "enterprise" according to the Delaware RICO statute. Second, he argues that the State presented insufficient evidence to prove that Lloyd was engaged in an "association-in-fact" enterprise under the RICO statute. Third, he argues that the State improperly vouched for and bolstered certain witnesses' testimony by asking several of the witnesses about the contents of their plea agreements. Finally, Lloyd argues that the cumulative effect of the errors violated his due process rights.

After a careful review of the record on appeal, we find Lloyd's claims to be without merit. Read as a whole, the racketeering jury instruction adequately informed the jury of the essential elements of a RICO violation under Delaware law. The State also presented substantial evidence of Lloyd's participation in a racketeering enterprise. Further, the trial judge did not plainly err by permitting the State to question witnesses on direct examination about their plea agreements after defense counsel did not object to their admission into evidence. Finally, because we do not find cumulative errors, Lloyd's due process claim is without merit. Accordingly, we affirm the judgment of the Superior Court.

## II. Facts And Procedural Background

In January 2014, after a string of shootings in the region, the Wilmington Police Department and the FBI began investigating a heroin dealing ring in Wilmington, Delaware. Andrew Lloyd was one of the main subjects of the investigation. The Wilmington Police and the FBI also collaborated with the Delaware State Police and the U.S. Drug Enforcement Administration who were conducting a parallel investigation of Lloyd and one of his co-defendants, Jarrell Brown ("Jarrell").

During the course of the investigation, Lloyd took part in many large-scale drug transactions, moving an average of 1,000-1,600 bundles[1] of heroin per week. He operated primarily through his associates, having them package, pick up, and deliver the drugs. Lloyd used the homes of Lakenya Howard, Wanda Lloyd ("Wanda"), Jarrell, and others to store, package, and prepare heroin for distribution. Lloyd also used places and names associated with national political figures to identify the homes and his associates.

On October 30, 2014, after months of surveillance and investigation, police obtained a search warrant and searched Lloyd's home and the homes of his many associates. They seized $12,932 and a car from Lloyd's home in Newark. They

---

[1] *E.g.*, App. to Opening Br. at 298; *Hunter v. State*, 945 A.2d 594, 2008 WL 625566, at *1 n.1 (Del. 2008) (Table) ("A bundle of heroin is 13 individual bags wrapped together.").

did not find drugs in Lloyd's home, but found them in his associates' homes. Police then arrested Lloyd and forty other individuals.

After earlier indictments, in late 2014, a New Castle County grand jury handed down a final 163-count, multiple-defendant indictment. The grand jury indicted Lloyd for a litany of offenses including criminal racketeering, conspiracy to commit criminal racketeering, multiple counts of aggravated possession of heroin, drug dealing heroin, second degree conspiracy, and possession of drug paraphernalia.

In October 2015, the Superior Court conducted an eight-day joint trial for co-defendants Lloyd and Antoine Miller. At the trial, over fifty witnesses testified for the State, including seventeen of Lloyd's co-defendants, twenty-seven law enforcement officers, several expert witnesses, a civilian, and Lloyd's former cellmate. Jarrell, Howard, Steven Roscoe, and Yasmeena Brown ("Yasmeena") were four of the co-defendant witnesses. Jarrell, Howard, and Roscoe testified about their relationship with Lloyd and the various drug deals they had done together. At the end of their testimony, the State asked each of them if their plea agreements required them to testify truthfully. The State also asked Roscoe if he was in fact testifying truthfully.

Yasmeena also testified as a witness for the State. She was uncooperative and repeatedly said she "did not remember" when the prosecutor asked her

4

questions, even after the prosecutor attempted to refresh her memory with the transcript of her police interview. To prompt Yasmeena to answer the questions, the prosecutor asked:

> State: And you agreed as part of your plea down in the condition section to testify truthfully here today?
>
> Yasmeena: Um-hmm.
>
> State: Ms. Brown, did you testify truthfully here today?
>
> Yasmeena: Yes.[2]

Lloyd did not object to the admission into evidence of the plea agreements by the State in its direct examination of witnesses, or the prosecutor's questioning of these witnesses on the contents of their plea agreements.[3]

On October 19, 2015, the State submitted to the court a proposed jury instruction on the charge of racketeering. Lloyd agreed with the instruction. The instruction included a specific definition of enterprise:

> In order to convict the defendant of Criminal Racketeering, you must find that the State has established all of the following elements and sub-elements beyond a reasonable doubt:

---

[2] App. to Opening Br. at 608.

[3] It appears that the State admitted into evidence on direct examination without objection sixteen of Lloyd's co-defendants' plea agreements. *Id*. at 87-88 (Davonte Lewis), 165 (Zechariah Palmer), 168 (Wanda), 174 (Blayton Palmer), 176-81 (Kimwanya Allen), 186-87 (Galen Collins), 194 (Demetrius Brown), 255 (Brian Miller), 368 (Jarrell), 411 (Janelle Lloyd), 442-43 (Roscoe), 474 (Howard), 497 (Kareem Keyes), 503-04 (Brian Palmer), 505 (Felicia Pagan), 607-08 (Yasmeena Brown).

(1)     The defendant was associated with an enterprise.  The term "enterprise" includes any group of persons associated in fact, although not a legal entity.  In order for you to conclude that the State has established beyond a reasonable doubt the existence of an enterprise consisting of a group of persons associated in fact, although not a legal entity, you must be satisfied that each of the following three sub-elements has been established beyond a reasonable doubt:

(a)     First, there must be an "on-going organization formal or informal."  To prove the existence of an ongoing organization, the State is require to present evidence that some type of structure exists within the group for making decisions and that there is a mechanism for controlling the affairs of the group on an on-going, rather than ad hoc, basis; and

(b)     Second, the enterprise may consist of various units but those units must function as a continuing unit.  To show a continuing unit, the State must show that each person within the enterprise has a  role consistent with the decision-making structure; and

(c)     Third, the enterprise existed separate and apart from the "pattern of racketeering," a term which I shall shortly define for you.  While the evidence used to prove the existence of an enterprise and a pattern of racketeering may coalesce, and while it is not necessary to show that the enterprise has some function wholly unrelated to racketeering activity, the State must show that the enterprise had an existence beyond that which is necessary to commit each of the acts charge.  However, an enterprise can be inferred from proof of a pattern of racketeering.  This third sub-element eliminates the possibility that minimal associations of people jointly committing crimes can be designated as racketeering enterprises by association-in-fact[.][4]

---

[4] *Id*. at 794-95.

On October 28, the State withdrew the original instruction and submitted an alternative jury instruction. This instruction, which had been in the court's draft instructions, included a more succinct definition of an "enterprise":

> In Delaware[,] it is unlawful for a person associated with an enterprise to conduct the enterprise's affairs [through] a pattern of racketeering activity[,] or to participate in the enterprise's affairs through a pattern of racketeering activity. To find the defendant guilty of criminal racketeering, you must find that each of the following elements has been proved beyond a reasonable doubt:

> One, defendant was associated with an enterprise; and two, defendant conducted the enterprise through a pattern of racketeering activity or defendant participated in the enterprise's affairs through a pattern of racketeering; and, three, defendant's conduct or participation in the pattern [of] racketeering was intentional.

> Under the law, an enterprise includes a group of people associated in fact for a common purpose. Pattern racketeering activity shall mean two or more felonies including, but not limited to, felony aggravated possession or drug dealing which are related to the enterprise's affairs but are not so closely related to each other as connected in time and place to constitute a single act, yet the felonies were not more than ten years apart. The underlying felonies are sometimes referred to, as I said, as predicate offenses.

> Conduct or participate in an enterprise's affairs means acting in a way that is necessary or helpful in carrying out the enterprise's business or operations, including the predicate offenses. Intentionally as used in the criminal racketeering law means it was defendant's conscious object and purpose to do the acts that constitute the alleged pattern of racketeering activity.[5]

---

[5] *Id*. at 769.

Over defense objection, the Superior Court gave the jury the alternative instruction.

On October 30, 2015, the jury found Lloyd guilty of all charges. The Superior Court sentenced Lloyd to a total of sixty-four years at Level V incarceration followed by probation. The Superior Court later modified Lloyd's sentence to run all Level V time concurrently, reducing Lloyd's sentence to twenty-five years at Level V incarceration, followed by two years of decreasing levels of supervision. This appeal followed.

## III. Analysis

### A. The Racketeering Jury Instruction

Lloyd first argues that the Superior Court's jury instruction did not adequately define "enterprise" under the RICO statute because it did not require "a decision-making framework" or that "the enterprise exist[ed] separate and apart from its pattern of racketeering."[6] We review the denial of a requested jury instruction *de novo*.[7]

"In evaluating the propriety of a jury charge, the jury instructions must be viewed as a whole."[8] A jury instruction is not a ground for reversal if "it is

---

[6] 11 *Del. C.* § 1503.
[7] *Bentley v. State*, 930 A.2d 866, 875 (Del. 2007).
[8] *Culver v. Bennett*, 588 A.2d 1094, 1096 (Del. 1991) (citing *Probst v. State*, 547 A.2d 114, 119 (Del. 1988)).

8

reasonably informative, not misleading and does not undermine the jury's ability to intelligently perform its duty."[9]  "Although a party is not entitled to a particular jury instruction, a party does have the unqualified right to have the jury instructed with a correct statement of the substance of the law."[10]  "An instruction which tracks the statutory language is adequate to inform the jury."[11]

Lloyd relies on *Stroik v. State*, where we held that the Delaware RICO statute is "essentially an adaptation of its federal counterpart" and thus, "reliance on federal precedent in this limited factual setting is warranted."[12]  This Court then looked to *United States v. Turkette*,[13] a United States Supreme Court case, and *United States v. Riccobene*,[14] a Third Circuit case, to refine the statutory definition of "enterprise" for purposes of a RICO violation.[15]  Citing the so-called *Turkette-Riccobene* factors, we held that to establish an "enterprise" under the RICO statute, the State had to demonstrate that (1) the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions; (2) the various

---

[9] *Koutoufaris v. Dick*, 604 A.2d 390, 399 (Del. 1992) (citing *Sirmans v. Penn*, 588 A.2d 1103 (Del. 1991)).
[10] *Culver*, 588 A.2d at 1096 (citing *Flamer v. State*, 490 A.2d 104, 128 (Del. 1983)).
[11] *Robertson v. State*, 596 A.2d 1345, 1354 (Del. 1991).
[12] *Stroik v. State*, 671 A.2d 1335, 1340 (Del. 1996).
[13] 452 U.S. 576 (1981).
[14] 709 F.2d 214 (3d Cir. 1983), *overruled by United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011).
[15] *Stroik*, 671 A.2d at 1340-41.

associates function as a continuing unit; and (3) the enterprise is separate and apart from the pattern of activity in which it engages.[16]

Later, in *Boyle v. United States*, the United States Supreme Court revisited the structural elements of a RICO violation and eliminated some of the earlier requirements to establish an association-in-fact enterprise:

> As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.[17]

Relying on *Boyle*, the Third Circuit expressly overruled its holding in *Ricobenne*.[18]

---

[16] *Id*. at 1341.

[17] *Boyle v. United States*, 556 U.S. 938, 948 (2009).

[18] *Bergrin*, 650 F.3d at 266 n.5 (3d Cir. 2011) (quoting *United States v. Riccobene*, 709 F.2d 214, 221-24 (3d. Cir. 1983)) ("Long before *Boyle*, we held in *United States v. Riccobene* that establishing an enterprise requires proof of an 'ongoing organization' with a 'superstructure or framework,' members who 'each ... perform a role in the group consistent with the organizational structure,' and 'an existence beyond that which is necessary merely to commit

Lloyd did not cite *Boyle* in his opening brief, and failed to take into account its effect on our decision in *Stroik*. At oral argument, Lloyd conceded that after *Boyle*, the instruction did not have to include the three *Turkette-Ricobenne* factors. He then shifted his attack to the lack of a longevity requirement in the instruction explaining that the group must remain in existence "long enough to pursue a course of conduct."[19]

Although it might have been helpful to the jury if the Superior Court elaborated on the longevity requirement, the jury instruction as given did not "undermine the jury's ability to intelligently perform its duty." The instruction tracked the language of the Delaware RICO statute. The jury was also instructed that to find Lloyd guilty of racketeering, it had to find that he was associated with an enterprise that was engaged in a pattern of racketeering, and that a pattern of racketeering is established by the commission of two or more felonies not too close in time to be considered a single act, but no more than ten years apart.[20] Thus, the jury was informed that it had to find that the defendants committed multiple felonies over time. Although we recommend that, in the future, the Superior Court

---

each of the acts charged as predicate racketeering offenses.' To the extent that this holding is inconsistent with *Boyle,* it is no longer good law.").

[19] *Boyle*, 556 U.S. at 948.

[20] App. to Opening Br. at 769 ("[T]wo or more felonies including, but not limited to, felony aggravated possession or drug dealing which are related to the enterprise's affairs but are not so closely related to each other as connected in time and place to constitute a single act, yet the felonies were not more than ten years apart.").

give a more comprehensive jury instruction similar to the Third Circuit's model instruction,[21] reading the instruction here as a whole, it was sufficient to inform the jury of the elements of racketeering under Delaware law.

## B. Insufficient Evidence of Association–In-Fact Enterprise

Lloyd next makes a related claim that the State presented insufficient evidence of an "association-in-fact" enterprise under the RICO statute to convict him of racketeering. Ordinarily, we review claims of insufficiency of the evidence "to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution could have found the essential elements of the charged offense beyond a reasonable doubt."[22] But Lloyd did not raise the issue below. Therefore, we review only for plain error.[23] Plain error "is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[24]

---

[21] *See* THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTIONS, *Racketeer Influenced and Corrupt Organizations (RICO)*, No. 6.18.1962C RICO – Conducting or Participating in the Conduct of the Affairs of an Enterprise Through a Pattern of Racketeering Activity; Elements of the Offense; No. 6.18.1962C-2 RICO – "Enterprise;" Association in Fact Defined, *available at*, http://www.ca3.uscourts.gov/sites/ca3/files/Chap%206%20RICO%20May%202013Rev.pdf (last visited Dec. 16, 2016).

[22] *Hardin v. State*, 844 A.2d 982, 990 (Del. 2004) (internal citations omitted).

[23] *Bullock v. State*, 775 A.2d 1043, 1046 (Del. 2001).

[24] *Wainright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

Once again Lloyd relies on *Stroik v. State*, and claims that the State was required to prove that the enterprise had an existence "separate and apart from the pattern of activity in which it engages."[25] But as explained previously, *Boyle v. United States* changed the RICO landscape by dispensing with the "separate" or "ascertainable" structure requirement. After *Boyle*, under the RICO statute the State need only prove that an association-in-fact enterprise has three characteristics: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.

Here the State presented ample evidence of an association-in-fact enterprise under the RICO statute as interpreted by *Boyle*. Lloyd, Howard, Wanda Lloyd ("Wanda"), and Galen Collins, the top ranks of the group, referred to themselves as national political figures.[26] Wanda testified that Lloyd and his various associates would package, pick up, and deliver heroin at her house, the "White House."[27] Multiple witnesses testified that Lloyd was the leader of the group, and that they

---

[25] *United States v. Turkette*, 452 U.S. 576, 577 (1981); *see also Stroik v. State*, 671 A.2d at 1341 (Del. 1996) (The State must show "that the enterprise [is] separate and apart from the pattern of activity in which it engages.").

[26] Multiple witnesses testified that Lloyd was "Obama," Howard was "Michelle," Collins was "Biden," Wanda was "Condoleeza," and Wanda's house was the "White House." *E.g.*, App. to Opening Br. at 169 (Wanda), 188 (Collins), 475-78 (Howard).

[27] *Id.* at 170-71.

13

acted at Lloyd's direction.[28]  Demetrius Brown,[29] Brian Miller,[30] Jarrell,[31] and Roscoe[32] testified that they sold thousands of bundles of heroin for Lloyd over many weeks' time.  The State introduced wiretap recordings, evidence of controlled buys, videos, and the testimony of over fifty witnesses establishing criminal activity spanning multiple incidents over a lengthy period of time.  Much of the evidence was corroborated by multiple witnesses.  Thus, the Superior Court did not plainly err by failing to declare a mistrial for lack of evidence of an association-in-fact enterprise.

### C. Prosecutorial Misconduct

Lloyd next argues that the State engaged in prosecutorial misconduct. Specifically, he alleges that the prosecutor improperly vouched for the credibility of certain witnesses and bolstered their testimony by asking co-defendants on direct examination about their plea agreements and whether they were required to testify truthfully.  He also argues that the prosecutor improperly bolstered

---

[28] *Id*. at 168 (Wanda testified that, at Lloyd's direction, she would rent cars for herself and Blayton Palmer throughout December 2013 to October 2014); 375-75 (Jarrell testified he would rent cars and switch his cell phones at Lloyd's direction, and that he would make deliveries for Lloyd), 437 (Roscoe testified that Lloyd would tell him when and where to make deliveries), 479 (Howard testified that she would switch cell phones often at Lloyd's direction).
[29] *Id*. at 193-94.
[30] *Id*. at 245-57.
[31] *Id*. at 297-332.
[32] App. to Opening Br. at 433-37.

testimony from co-defendants about Lloyd's illegal activities by calling witnesses to testify that they pled guilty to racketeering.

Lloyd did not object at trial when the State offered the plea agreements into evidence during the direct examination of the co-defendants. Once the plea agreements were admitted into evidence on direct examination without objection, the State was free to examine the witnesses about the plea agreements and their contents. The trial judge thus did not plainly err in permitting co-defendants to be examined on direct examination about their plea agreements.[33]

### D. Cumulative Error

Finally, Lloyd argues that the cumulative impact of the errors in the jury instructions and prosecutorial misconduct amount to plain error. "[W]here there are several errors in a trial, a reviewing court must weigh the cumulative impact to determine whether there was plain error."[34] We have previously held that the trial court did not err in instructing the jury, and that the Superior Court did not plainly err by allowing the State to examine the co-defendants on their plea agreements which were admitted into evidence without objection. Thus, Lloyd's cumulative error claim fails.

---

[33] We express no opinion on the admissibility of plea agreements under the Delaware Rules of Evidence, or limitations on the use of plea agreements by the State during the direct examination of co-defendants.

[34] *Wright v. State*, 405 A.2d 685, 690 (Del. 1979).

## IV.    Conclusion

We affirm the judgment of the Superior Court.