# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. 1708007568 |
| | ) | |
| MICHELLE N. ROBERTS | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 18, 2018
Decided: May 2, 2018

## ORDER

**Defendant's Motion to Dismiss Count I of the Indictment: Denied**
**State's Motion *in limine* to Admit Facebook Photographs: Denied**

1. The State initiated this criminal case after Defendant allegedly confessed to multiple instances of fraud against her former employer, Cox Auto Group. The State charged Defendant with racketeering in violation of 11 *Del. C.* § 1503(a), in addition to other counts of theft and forgery. The indictment alleged Cox Auto Group and its financing arm, HCAC Financial Services, LLC, simultaneously were the victims of, and the enterprises that facilitated, Defendant's racketeering activity. Defendant moved to dismiss the racketeering charge, arguing an "enterprise" cannot also be the victim of alleged racketeering under Section 1503(a). The State also filed a motion *in limine* seeking a pretrial ruling as to the admissibility of photographs posted on Facebook purportedly depicting Defendant's destination wedding shortly before the alleged

crimes were discovered. The issues presented are 1) whether the State must allege in the indictment the existence of a legal "enterprise" distinct from the victim of the alleged racketeering activities, and 2) whether photographs depicting Defendant's wedding, which occurred during the period of Defendant's alleged fraud, are admissible under Rules 401 and 403 of the Delaware Uniform Rules of Evidence.

**BACKGROUND**

2.      Cox Auto Group, Inc. ("Cox") is a used-car dealership located in Newark, Delaware. Defendant Michelle Roberts worked as a cashier at Cox from November 2015 through August 2017. As a cashier, Defendant was responsible for accepting customer payments for Cox and its associated financing arm, HCAC Financial Services, LLC ("HCAC"). Defendant also was responsible for depositing customer payments for Cox and HCAC at WSFS Bank ("WSFS").

3.      Cox's deposit process consisted of two steps. First, Defendant would fax or scan copies of WSFS deposit tickets and checks to HCAC to reflect the amount to be deposited at WSFS. Then, Defendant would deposit the checks and cash into the Cox and HCAC accounts at WSFS.

4.      Beginning in March 2017, Defendant allegedly began "shorting" the deposits by not depositing the full amount represented in the deposit tickets. According to a confession allegedly penned by Defendant, "[f]or each daily

2

deposit [she] would use [the deposit] to cover a previous days [sic] deposit. . . . The deposit would be delayed because it was being used to cover the prior deposit."[1]

5.      According to the State, after Defendant resigned her position at Cox, an internal audit uncovered nineteen missing deposits from the previous six months. The discrepancy was estimated to exceed $40,000. On August 7, 2017, Defendant allegedly confessed to HCAC officials that she misappropriated funds from Cox. On October 2, 2017, a grand jury indicted Defendant on one count of racketeering ("Count I"), two counts of theft, and two counts of forgery.

6.      Count I of the indictment states:

**CRIMINAL RACKETEERING,** in violation of Title 11, Section 1503(a) of the Delaware Code of 1974, as amended.
**MICHELLE N. ROBERTS** on or between the 1st day of March, 2017, and the 5th day of August, 2017, in the County of New Castle, State of Delaware, while employed by or associated with Cox Auto Group, Inc., or HCAC Financial Services, LLC, enterprises as defined by Title 11, Section 1502(3), did knowingly conduct or participate in the conduct of the affairs of said enterprise or enterprises through a pattern of racketeering activity as defined by Title 11, Sections 1502(5) and 1502(9) that is more fully described in Counts II, III, IV, or V, incorporated herein by reference.

7.      Counts II through V go on to allege Cox and HCAC were the victims of Roberts' theft and forgery. Defendant moved to dismiss Count I of the indictment, arguing the alleged racketeering "enterprise" and victim cannot be the

---

[1] State's Answ. Br. at 2.

3

same entity under Section 1503(a). The parties briefed and argued the motion. I find Section 1503(a) permits the racketeering enterprise and victim to be the same under federal precedent interpreting the substantively-identical federal racketeering statute, and Defendant's motion therefore is denied.

**ANALYSIS**

8. Delaware Criminal Rule of Procedure 12(b) provides that "objections based on defects in the indictment" must be raised before trial.[2] "The procedure whereby the Court can consider a motion to dismiss prior to trial has been compared to a civil motion for summary judgment."[3] "In effect, if there are genuine issues of material fact, a jury must decide the issue involved."[4]

**A. A Section 1503(a) "enterprise" also may be the victim of the alleged racketeering activity.**

9. Defendant argues the racketeering charge must be dismissed as a matter of law because the alleged victim and enterprise cannot be the same under Section 1503(a). In other words, Defendant contends the claim must be dismissed because Cox and HCAC are the alleged victims of the racketeering activity as well as the alleged enterprises through which the activity was conducted.

10. Section 1503(a) provides:

> It shall be unlawful for any person employed by, or associated with, any enterprise to conduct or participate

---

[2] Super. Ct. Crim. R. 12(b)(2).
[3] *State v. Baker*, 679 A.2d 1002, 1006 (Del. Super. 1996).
[4] *Id.*

in the conduct of the affairs of the enterprise through a pattern of racketeering activity or collection of an unlawful debt.[5]

11. Although there is no Delaware case directly addressing this issue, the parties agree this Court should consider federal precedent because Delaware's RICO statute essentially is an adaptation of the federal statute.[6] Specifically, Section 1503(a), the statutory provision under which Defendant is charged, contains the same elements as 18 U.S.C. § 1962(c), except the federal statute also requires that the enterprise and its activities affect interstate commerce.

12. Defendant's argument relies strongly on *Jaguar Cars, Inc. v. Royal Oaks Motor Co., Inc.*,[7] in which the Third Circuit noted that "a victim corporation drained of its own money by pilfering officers and employees could not reasonably be viewed as the enterprise through which employee persons carried out their racketeering activity."[8] In *Jaguar Cars*, the officers of a Jaguar car dealership allegedly submitted fraudulent warranty claims to the manufacturer.[9] After discovering the alleged fraud, the manufacturer brought a civil RICO action under 18 U.S.C. § 1962(c) against the dealership and its officers.[10] The Third Circuit

---

[5] 11 *Del. C.* § 1503(a).
[6] Def.'s Mot. Dismiss Indictment 5 (citing *Stroik v. State*, 671 A.2d 1335, 1340 (Del. 1996) (distinguished by *Lloyd v. State*, 152 A.3d 1266, 1273 (Del. 2016) (noting the *Stroik* Court's "separate" or "ascertainable" structure requirement was dispensed with in *Boyle v. United States*, 556 U.S. 938 (2009))).
[7] 46 F.3d 258 (3d Cir. 1995).
[8] *Id.* at 267 (internal quotation marks omitted).
[9] *Id.* at 260.
[10] *Id.*

previously held in *Glessner v. Kenny*[11] that "persons" under Section 1962(c) must be distinct from the "enterprise" through which they conduct the racketeering activity.[12] The officers argued the manufacturer's RICO claims legally were insufficient because the manufacturer failed to demonstrate a distinction between the "persons" allegedly liable and the "enterprise" through which they acted.[13]

13.     First, the Third Circuit considered whether the distinctiveness requirement the court articulated in *Glessner* survived the Supreme Court's opinions in *Reves v. Ernst & Young*[14] and *Nat'l Org. of Women v. Scheidler*.[15] The Third Circuit held that *Glessner*'s limitation of 18 U.S.C. § 1962(c) to cases in which "outside" defendants either victimize the corporate enterprise or operate it as a passive tool did not survive the *Reves* and *Scheidler* decisions, and that officers properly may "be held liable as persons managing the affairs of their corporation as an enterprise through a pattern of racketeering activity . . . ."[16]

---

[11] 952 F.2d 702 (3d Cir. 1991).

[12] In *Glessner*, the Third Circuit limited "§ 1962(c) claims to only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons,' and either drained of its own money or used as a passive tool to extract money from third parties." *Jaguar*, 46 F.3d at 264 (quoting *Glessner v. Kenny*, 952 F.2d 702, 713 (3d Cir. 1991) (internal quotation marks omitted)).

[13] *Id.*

[14] 507 U.S. 170, 185 (1993) ("Of course, 'outsiders' may be liable under § 1962(c) if they are 'associated with' an enterprise and participate in the conduct of its affairs—that is, participate in the operation or management of the enterprise itself . . . .").

[15] 510 U.S. 249, 259 (1994) ("[T]he 'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity.").

[16] *Jaguar*, 46 F.3d at 261.

14. The central issue in *Jaguar Cars*, therefore, was whether the dealership sufficiently was distinct from the officers to satisfy § 1962(c)'s requirement that the "person" conducting the RICO activity is distinct from the "enterprise."[17] In what widely is considered dictum, however, the Court also stated that a RICO "enterprise" cannot also be the victim of the racketeering activity.[18]

15. Several subsequent federal circuit and district court opinions have criticized the *Jaguar Cars* Court's interpretation of *Scheidler* and have permitted claims under Section 1962(c) where the alleged enterprise also is the victim of the racketeering activity.[19] At least one court in the Third Circuit appears to hold a RICO victim and enterprise can be the same entity.[20]

16. Most directly, in *United States v. Browne*,[21] the Eleventh Circuit rejected the *Jaguar Cars* Court's *Scheidler* discussion as unpersuasive dictum.[22] In *Browne*, the Court reasoned the *Jaguar Cars* decision misconstrued the holding in

---

[17] *Jaguar*, 46 F.3d at 269.

[18] *Id.* at 267 (quoting *Nat'l Org. of Women v. Scheidler*, 510 U.S. 249, 259 (1994)).

[19] *See United States v. Goldin Indus., Inc.*, 219 F.3d 1268 (11th Cir. 2000) ("The distinction between the RICO person and the RICO enterprise is necessary because the enterprise itself can be a passive instrument *or victim* of the racketeering activity.") (emphasis added); *LaSalle Bank Lake View v. Seguban*, 937 F.Supp. 1309 (N.D. Ill. 1996) ("[T]his court does not agree with the leap of logic made by the Third Circuit from the Supreme Court's *Scheidler* statement that 'enterprises' '*generally*' are not 'victims,' to the conclusion that 'enterprises' *cannot be* 'victims.'") (emphasis in the original).

[20] *Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622, at *5 (E.D. Pa. Aug. 14, 2000) ("A plaintiff [in a civil RICO claim] also can be an enterprise or a member of an enterprise.").

[21] 505 F.3d 1229 (11th Cir. 2007).

[22] *Id.* at 1272-73 ("We find this dictum in *Jaguar Cars* to be unpersuasive.").

*Scheidler*,[23] pointing out that the central issue in that case was whether racketeering acts must have an economic motive.[24]

> In holding that an economic motive was unnecessary, the [*Scheidler*] [C]ourt explained that "the 'enterprise' in subsection (c) connotes *generally* the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." By so qualifying its language, therefore, the *Scheidler* Court did not foreclose the possibility that the enterprise can also be the victim of the alleged RICO violation.[25]

17. The *Browne* Court held *Jaguar Cars*'s reliance on *Reves* also was misplaced.[26]

> The issue in *Reves* was how much involvement in a corporation's affairs an outside accounting firm must have in order to be deemed a participant in the conduct of those affairs. . . . The Court's statement that "Congress consistently referred to subsection (c) as prohibiting the *operation* of an enterprise through a pattern of racketeering activity and to subsections (a) and (b) as prohibiting *acquisition* of an enterprise," thus underscored the Court's application of an "operation or management" test, not the validity of a victim/vehicle distinction.[27]

The *Browne* Court concluded by affirming subsection (c) targets criminal activity that exploits "legitimate businesses by corrupt individuals."[28] The Seventh Circuit

---

[23] *Id.* at 1273.

[24] *Id.*

[25] *Id.* (quoting *Nat'l Org. of Women v. Scheidler*, 510 U.S. 249, 259 (1994)) (emphasis in the original) (internal citations omitted).

[26] *Id.*

[27] *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 182 (1993)) (emphasis in the original) (internal citations omitted).

[28] *Id.* (quoting *United States v. Goldin Indus., Inc.*, 219 F.3d 1268 (11th Cir. 2000)).

8

in *United States v. Warner*[29] reached a similar conclusion, holding the State of Illinois could be both victim and enterprise in a RICO charge under Section 1962(c).[30]

18.    I agree with the *Browne* Court that the *Jaguar Cars* language on which Defendant relies is dictum. The issue before the *Jaguar Cars* Court was not whether an enterprise simultaneously can be a victim for purposes of RICO. In that case, the victim was the plaintiff-manufacturer, while the "enterprise" was the dealership that employed the defendants. For that reason, the language on which Defendant relies was not necessary to the *Jaguar Cars* Court's holding. I agree with the decision in *Browne* and similar cases that the statutory language does not preclude a RICO claim or charge in which the enterprise and alleged victim are the same.[31] Accordingly, Count I properly alleges a claim against a RICO enterprise.

**B. A Section 1503(a) claim properly may be brought against a single defendant.**

19.    Defendant also argues Count I should be dismissed because (i) she acted alone, and (ii) no racketeering enterprise existed apart from her. Defendant

---

[29] 498 F.3d 666 (7th Cir. 2007).

[30] *Id.* at 696.

[31] In a supplemental submission after oral argument, Defendant argues *Browne* and similar "public corruption" RICO cases are distinct because it is really the "public," and not the government, that is the victim in such cases. Defendant cites no case drawing this distinction, if indeed it is a distinction, and it is not a reason cited by those courts that declined to follow *Jaguar Cars.* Moreover, it is not only public corruption cases in which courts have concluded an enterprise also may be a victim under the federal RICO statute. *See LaSalle Bank Lake View v. Seguban*, 937 F.Supp. 1309 (N.D. Ill. 1996).

appears to argue that, like the association of officers in *Jaguar Cars*, a group of co-conspirators is necessary to satisfy the requirement of a separate "enterprise" under Section 1503(a). Additionally, Defendant argues Section 1503(a) was designed to target groups of organized criminals, which does not apply to this case because she acted alone.

20. Section 1501 of Delaware's RICO statute provides:

> The purpose of this chapter is to guard against and prevent the infiltration and illegal acquisition of legitimate economic enterprises by racketeering practices, and the use and exploitation of both legal and illegal enterprises to further criminal activities. This chapter is intended to apply to conduct beyond what is traditionally regarded as "organized crime" or "racketeering."[32]

Accordingly, the Chapter explicitly applies to more than what traditionally is considered organized crime. This is consistent with the drafter's intent "that a person who engages in a continuing pattern of illicit conduct is more culpable than a person who engages in one instance of that conduct."[33]

21. Additionally, Section 1503(a) provides "[i]t shall be unlawful for any *person* . . . to . . . participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity . . . ."[34] The statute, therefore, targets racketeers

---

[32] 11 *Del. C.* § 1501.
[33] *Stroik v. State*, 671 A.2d 1335, 1342 (Del. 1996).
[34] 11 *Del. C.* § 1503(a) (emphasis added).

acting alone. In view of the statute's application to individual racketeers, the Court is left to consider Defendant's argument that no enterprise existed apart from her.

22.    As discussed in section A, a racketeering enterprise may be the same as the victim of the racketeering activity. In this case, the State alleges Cox and HCAC were the racketeering enterprises as well as the victims of Defendant's racketeering activities. The State, therefore, properly alleged the existence of a separate enterprise through which Defendant engaged in a pattern of racketeering activity.

## C. The danger of unfair prejudice substantially outweighs the marginal probative value of the Facebook photographs.

23.    The State also filed a motion *in limine* to allow introduction of photographs that were posted to Defendant's Facebook page. Those photographs, all of which were posted on July 17, 2017, appear to show Defendant getting married in Tennessee. The photographs themselves are undated and show a variety of wedding-related items, including Defendant's dress, flowers, limousine, and wedding location. The State argues the photographs show Defendant was absent from work for approximately two weeks in July 2017, which was when Cox and HCAC first discovered the missing deposits. According to the State, it was only when Defendant was absent for an extended period, and therefore unable to cover previous thefts with new deposits, that the companies' bookkeeper discovered the missing funds.

11

24. The State contends the wedding photographs should be admitted for a number of reasons. First, the State argues the fact that Defendant's alleged scheme only was discovered during her extended absence from work shows that (i) it was Defendant, and not another employee, who engaged in the alleged scheme, and (ii) Defendant's activities would have continued had they not been discovered. The latter issue is important, the State maintains, because it satisfies the "continuity" element of the RICO charge. The State also argues the photographs are circumstantial evidence of Defendant's motive, allowing the State to suggest to the jury that Defendant might have used the money she allegedly stole to fund what the State paints as an expensive wedding. Defendant argues the photographs are not relevant to identity, continuity, or motive because they are not dated and were not necessarily taken on the date they were posted to Facebook. Defendant also asserts the photographs are not relevant to motive because the State has no evidence of how much the wedding cost, who paid for it, or that Defendant used any stolen funds to finance the wedding. Defendant further argues that any tangential relevance substantially is outweighed by the danger of unfair prejudice or confusion of the issues.

25.     The parties agree the Court's analysis is governed by Delaware Rules of Evidence 401 and 403.[35]  Relevance is the Court's threshold inquiry; only relevant evidence is admissible at trial, which means evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[36]  In evaluating relevance, the Court considers both materiality and probative value.[37]  Materiality refers to the relationship between the propositions for which the evidence is offered and the issues in the case, while probative value refers to the tendency of the evidence to establish the proposition that it is offered to prove.[38]

26.     There is no doubt that questions of identity, continuity, and motive are material to the case.  The Facebook photographs' probative value, however, is marginal at best.  At most, the Facebook photographs establish that Defendant got married in Tennessee.  As they are not dated, they do not indisputably establish Defendant's wedding date.  Even assuming, however, that the photographs are circumstantial evidence that Defendant got married on or close to the date the photographs were posted, the photographs only establish that Defendant was out of

---

[35] Although the parties' briefs analyzed the issues under Rule 404(b), at oral argument the parties agreed that Defendant's wedding was not a "crime, wrong, or other bad act" and therefore did not fit the confines of that rule.
[36] D.R.E. 401.
[37] *Gallaway v. State*, 65 A.3d 564, 569-70 (Del. 2013).
[38] *Id.* at 569.

13

the state for her wedding. The photographs do not establish the length of her absence or that the wedding occurred on a day Defendant otherwise would have been working. Therefore, to the extent they are offered for purposes of establishing identity or continuity, the photographs only are minimally probative of those issues. The State presumably can establish the length of Defendant's absence from work through Cox's records or witness testimony. As to the State's theory of motive, without some other evidence that Defendant used the funds to pay for her wedding, or even paid for her wedding at all, the photographs themselves are not circumstantial evidence of motive.[39]

27.  Even marginally relevant evidence may be admissible at trial, provided its probative value is not outweighed substantially by the danger of unfair prejudice, confusions of the issues, or misleading the jury.[40] Here, danger of unfair prejudice—that is, the danger that the jury will consider the photographs for improper or emotional reasons, rather than for the reasons they are offered—substantially outweighs the photographs' value in establishing identity or continuity. In other words, it is very likely the jury may conclude Defendant used stolen funds to pay for a wedding she could not otherwise afford, even though

---

[39] The State's theory that the photographs are relevant to motive is difficult to distinguish from an argument that an alleged drug dealer's manner of living or type of car is relevant to establish motive for dealing drugs. Without any evidence of a connection between the wedding and allegedly ill-gotten funds, the photographs have no more tendency to establish motive than any other aspect of Defendant's life in which she might have spent money.

[40] D.R.E. 403.

14

there is no evidence establishing who paid for the wedding, how much it cost, or how the allegedly misappropriated funds were used. Accordingly, although they technically are relevant under Rule 401, the proffered photographs are not admissible under Rule 403.

For the foregoing reasons, Defendant's Motion to Dismiss Count I of the indictment is **DENIED**, and the State's Motion *in limine* to admit Facebook photographs is **DENIED**.

**IT IS SO ORDERED.**

_____
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Andrew J. Meyer, Esquire
       Stephen McDonald, Esquire