IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVINE BOYCE, | § | |
| | § | No. 378, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1910003971 (N) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: April 16, 2025
Decided: May 15, 2025

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

After consideration of the parties' briefs and the Superior Court record, it appears to the Court that:

(1) On October 6, 2019, Corporal Akil, of the Wilmington Police Department, observed Davine Boyce ("Boyce") and two individuals walking in the area of the unit block of East 23rd Street.[1] When the group observed Corporal Akil's marked patrol car, Boyce was the only one who detached from the group and began to walk quickly to East 23rd Street.[2] After observing Boyce depart from his group

---

[1] App. to Opening Br. at A93–95 (Akil Test.).

[2] *Id.* at A95 (Akil Test.).

and begin to walk while gripping the right side of his waistband and swinging his left arm, Corporal Akil decided to continue monitoring Boyce's actions.[3]

(2)  Corporal Akil drove parallel to Boyce.  Boyce, walking on the driver side of Akil's vehicle, began to "blade" the right side of his body away from the vehicle and grab the right side of his waistband.[4]  Corporal Akil testified that Boyce's actions were "indicative of a security check."[5]  Corporal Akil, while in his vehicle, asked Boyce to lift up the side of his shirt to see how Boyce would react.

(3)  Instead of remaining in his original position and lifting the right side of his jacket, which was closer to Corporal Akil, Boyce turned around and lifted the left side of his jacket.  At that point, Corporal Akil believed that Boyce was in possession of a firearm.  When Corporal Akil parked his vehicle and began to open the door, Boyce ran.

---

[3] *Id.* at A97 (Akil Test.) (stating that "his left arm was in a swinging motion while his right arm was firmly pinned to the right side of his waistband.").

[4] *Id.*

[5] *Id.*; *see also id.* at A97–98 (Corporal Akil testified that a security check is "when individuals are in possession of a concealed firearm illegally.  They will put the firearm in their waistband pocket area due to them not being able to have a firearm holster.  Due to the weight and the shape of the firearm, it can easily relocate on that person.  So routinely you will see individuals grab, manipulate, touch just to the keep the firearm in place because it can easily fall out of their waistband.").

(4)     Corporal Akil radioed WILCOM to seek assistance from other officers and described Boyce's attire and current direction of travel.  Boyce's attire was described as "[an] army fatigue jacket and dark-colored pants."[6]

(5)     Following Corporal Akil's WILCOM transmission, Corporal Banks and her partner began an area search.[7]  Approximately thirty minutes later, they saw Boyce on 28th Street.[8]  When Boyce noticed the police vehicle, he performed a security check and sprinted away.  Corporal Banks radioed WILCOM about the occurrence, but she did not see Boyce again before he was in custody.

(6)     Detective Gibson also responded to Corporal Akil's WILCOM transmission and began searching for Boyce.  Eventually, Detective Gibson began to search the 29th and Tatnall Street area on foot.[9]  Detective Gibson noticed that the house located at No. 6 West 29th Street was poorly lit, and he used a flashlight to examine the front yard.[10]  He saw two trash cans next to each other pushed against a white vinyl fence.

(7)     Detective Gibson found Boyce wearing blue jeans and a camouflage army green jacket with the hood up, laying in the fetal position next to the trashcans

---

[6] Id. at A101 (Akil Test.).

[7] Id. at A130 (Banks Test.).

[8] Id. at A131, A138, A140 (Banks Test.).

[9] Id. at A145–46 (Gibson Test.).

[10] Id. at A146–47 (Gibson Test.).

with both of his hands concealed beneath him.[11]  Detective Gibson gave two loud and clear commands for Boyce to show his hands.  Boyce then complied and was handcuffed, given a pat down, and secured in a patrol vehicle.[12]  No weapon was found on Boyce while he was being secured.

(8)    Detective Meese, who was assigned to the K-9 unit, also responded to the scene to assist.[13]  After Detective Gibson had Boyce in custody, Detective Meese conducted a brief area search.  Detective Meese moved one of the trash cans near where Boyce was found and discovered a handgun.  Detective Meese alerted nearby officers of his discovery.[14]  He did not write or supplement the police report, nor was he present when the gun was collected.[15]

(9)    Master Corporal Gula took photographs of the firearm and the location where it was found.[16]  Corporal Gula also took photographs of the firearm later that night back at headquarters.[17]

---

[11] *Id.* at A149 (Gibson Test.).  When Boyce was taken into custody, he was about eleven blocks from his home.  *Id.* at A204–06 (Banks Test.).

[12] *Id.* at A156 (Gibson Test.).

[13] *Id.* at A159 (Meese Test.).

[14] *Id.* at A170 (Meese Test.).

[15] *Id.* at A168, A173 (Meese Test.).

[16] *Id.* at A180 (Gula Test.).

[17] *Id.* at A182–83 (Gula Test.).

(10)  When Boyce was arrested on October 6, 2019, he was charged with Possession of a Firearm by a Person Prohibited ("PFBPP"), Carrying a Concealed Deadly Weapon ("CCDW"), and Resisting Arrest.  The Grand Jury later returned an indictment against Boyce on December 9, 2019, charging him with the same offenses.

(11)  On December 10, 2019, Detective Hugh Stephey ran tests on the firearm that was found and collected at the crime scene.[18]  The firearm was identified as a "Llama model 111A 380 caliber semi-automatic handgun" and deemed to be an "operable, working firearm."[19]  No useable fingerprint or DNA evidence was found on the firearm.[20]

(12)  Boyce's trial began on November 13, 2023, and lasted two days.  At trial, the State and Boyce stipulated that Boyce was a person prohibited from possessing, owning, or controlling a firearm on October 6, 2019.  The trial court also granted Boyce's motion for judgment of acquittal on the resisting arrest charge.

(13)  Boyce requested that a "mere presence" jury instruction be included in the jury charge.[21]  This instruction states: "Evidence that the defendant was merely present at the scene of the alleged crime, or in the area, is insufficient to support a

---

[18] *Id.* at A186, A196 (Stephey Test.).

[19] *Id.* at A187, A192 (Stephey Test.).

[20] *Id.* at A191 (Stephey Test.), A215–18 (Lindauer Test.).

[21] *Id.* at A260B.

guilty verdict."[22]  After discussing the request with the parties, the trial court decided not to give the instruction.[23]  The trial court reasoned that Boyce could still make his argument regarding possession and that the "mere presence" instruction could cause jury confusion.[24]

(14)  On November 14, 2023, the jury found Boyce guilty of both PFBPP and CCDW.[25]  On August 9, 2024, the trial court sentenced Boyce to the mandatory minimum of five years of level V incarceration for PFBPP and eight years of level V incarceration suspended for one year of level III probation for CCDW.[26]  This appeal followed.

## I.   CONTENTIONS ON APPEAL

(15)  Boyce raises a single issue on appeal.  Boyce claims that the trial court erred by not giving his requested "mere presence" jury instruction explaining that

---

[22] Del. Pattern Crim. Jury Instruction 4.10 ("Presence of Defendant at the Scene of the Crime").

[23] *Id.* at A264–67.

[24] *Id.* at A263–66.  The trial court stated, "What is the scene of the crime that he was present at? He's the scene of the crime. . . . This is a carrying a concealed deadly weapon by a person prohibited.  I get when you have like a drug deal and the person is there.  And I get when you have like a burglary and, you know, they find the person on the street.  I'm not really sure I follow this. I'm worried about confusion with the jury."  *Id.* at A263.  And later, "I think you're protected through the argument of possession both with respect to carrying a concealed deadly weapon, especially with respect to carrying a concealed deadly weapon, not – you know, the possession is [a] little broader with possession of a firearm by a person prohibited.  But I'm worried about jury confusion, so I'm not going to give that instruction[.]"  *Id.* at A266.

[25] *Id.* at A7–8, A317.

[26] *Id.* at A323–27.  Because Boyce was already serving time for other sentences that included probation, the trial court sentenced the five-year mandatory minimum to run consecutive to Boyce's other sentences with no probation to follow.  *Id.*

6

his mere presence at the crime scene was insufficient to prove that he was guilty of the PFBPP and CCDW charges. He maintains that a "mere presence" jury instruction was required because it was a correct statement of the law, and its absence undermined the jury's ability to intelligently perform its duty. Boyce argues that had the jury been properly instructed, they would have been informed that such circumstances were adequate grounds for acquittal and likely would have voted to acquit him.

(16) The State contends that the trial court's jury instructions were proper because the jury instructions as a whole clearly conveyed that more than Boyce's mere presence at the crime scene (or near the firearm) was required to prove his guilt. Therefore, an instruction as to mere presence was unnecessary. In addition, the State argues that Boyce did not show how the absence of a mere presence instruction prejudiced his defense.

## II. STANDARD OF REVIEW

(17) This Court reviews *de novo* a trial court's refusal to give a jury instruction.[27]

---

[27] *Cseh v. State*, 947 A.2d 1112, 1113 (Del. 2008) (quoting *Wright v. State*, 953 A.2d 144, 148 (Del. 2008) ("[O]ur review of the trial court's refusal to give [a] jury instruction is *de novo*."); *see also Wright*, 953 A.2d at 148 ("To summarize, this Court will review *de novo* a refusal to instruct on a defense theory (in any form); and it will review a refusal to give a 'particular' instruction (that is, an instruction is given but not with the exact form, content or language requested) for an abuse of discretion. To the extent that some of our previous decisions appear to suggest a standard of review different from that announced here, we overrule them.") (internal citations omitted).

### III. ANALYSIS

(18) Delaware law is clear that "a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[28] Furthermore, "[a] trial court's jury charge will not serve as grounds for reversible error if it is 'reasonably informative and not misleading, judged by common practices and standards of verbal communication.'"[29] Thus, reversal is appropriate only if the deficiency of the jury instructions "undermine[s] the ability of the jury to intelligently perform its duty in returning a verdict."[30]

(19) In the context of mere presence jury instructions, this Court held in a pair of cases decided in 2005, *Manlove v. State*[31] and *Carter v. State*,[32] that if the jury instructions as a whole clearly convey that more than a defendant's mere presence at the scene is required to prove the defendant's guilt, a separate mere presence instruction is not required.[33]

---

[28] *Flamer v. State*, 490 A.2d 104, 128 (Del. 1983) (citing *Miller v. State*, 224 A.2d 592, 596 (Del. 1966)); *see also Lloyd v. State*, 152 A.3d 1266, 1271 (Del. 2016) ("Although a party is not entitled to a particular jury instruction, a party does have the unqualified right to have the jury instructed with a correct statement of the substance of the law.").

[29] *Flamer*, 490 A.2d at 128 (quoting *Baker v. Reid*, 57 A.2d 103, 109 (Del. 1947)).

[30] *Ray v. State*, 280 A.3d 627, 640 (Del. 2022) (quoting *Probst v. State*, 547 A.2d 114, 119 (Del. 1988)).

[31] 867 A.2d 902, 2005 WL 277929, at *1 (Del. Jan. 19, 2005) (TABLE).

[32] 873 A.2d 1086 (Del. 2005).

[33] *Manlove*, 2005 WL 277929, at *1 (holding that "a mere presence jury instruction was not required in view of all the other instructions given in this case" because "[t]he jury instructions as a whole clearly conveyed that more than the defendant's mere presence in the apartment was required to prove his guilt."); *Carter*, 873 A.2d at 1088 (holding that a "mere presence" jury

(20) Boyce does not contest the propriety of the jury instructions that were given. Instead, Boyce attempts to distinguish *Manlove* and *Carter* from his case. Boyce emphasizes that both cases involved contraband found in the defendants' homes with other people present and that a "mere presence" instruction was not necessary in *Manlove* or *Carter* because the juries had "sufficient cause to believe that *someone* in the homes possessed the contraband found, leaving only the question of identity truly at issue."[34] He argues that because this case differs factually from *Manlove* and *Carter*, in that the firearm was dirty and found under a trash can at a residence unconnected to himself, a mere presence instruction was necessary. His argument fails.

(21) In *Manlove*, the police were informed that the defendant "was selling crack cocaine out of his apartment located in Wilmington, Delaware."[35] The police monitored the defendant's activity and obtained a search warrant based on their observations. While conducting the warrant, two people were in the apartment, the defendant Floyd Manlove and his brother Ernest. The brother fled. A drug-trained police dog assisted in searching the apartment, which led to the discovery of crack

---

instruction was not required because "[h]ere, the jury instruction given clearly indicated that more than Carter's 'mere presence' in the bedroom was required to be shown in order to prove Carter's guilt for the offenses charged.").

[34] Opening Br. at 14 (emphasis in original).

[35] *Manlove*, 2005 WL 277929, at *1.

cocaine and marijuana inside the apartment. The defendant was convicted and appealed, arguing that:

> [H]e was entitled to the mere presence jury instruction because it was a correct statement of the law given the evidence in the record that there were two people in the apartment when the search warrant was executed (one of whom fled the scene), other individuals had access to the apartment on a regular basis and the drugs were not found on his person.[36]

This Court held that a mere presence instruction was not required because "[t]he jury instructions as a whole clearly conveyed that more than the defendant's mere presence in the apartment was required to prove his guilt."[37] Included in the jury instructions were the defendant's presumption of innocence and the requirement that the State prove every element of each offense charged.

(22) In *Carter*, a search warrant was executed on a house in Wilmington, Delaware.[38] Initially, two residents were arrested for outstanding warrants. Upon further investigation, the officers found the defendant inside a bedroom located in the basement of the house. A search of the room revealed a handgun, ammunition, and marijuana. The defendant was convicted of possession of a firearm during the commission of a felony, possession of a deadly weapon and ammunition by a person prohibited, and other drug offenses.

---

[36] *Id.*

[37] *Id.*

[38] *Carter*, 873 A.2d at 1087.

10

(23) On appeal, the defendant argued that the trial court erred by failing to include a mere presence instruction. He reasoned that the credibility of his defense counsel was diminished because the trial court initially agreed to include a mere presence instruction but ultimately did not. This Court held that defense counsel had not "suffered a loss of credibility before the jury when the substance of the jury instructions given conveyed that more than Carter's 'mere presence' in the bedroom was required for a conviction."[39]

(24) Neither *Manlove* nor *Carter* hinge the requirement to charge the jury with a "mere presence" instruction on whether contraband was found within a defendant's residence, as Boyce contends. In both cases, this Court examined the jury instructions in their entirety to determine whether the given instructions clearly convey that more than the defendant's mere presence is required for a finding of guilt. Where that requirement is clearly conveyed, this Court has held that a separate "mere presence" instruction is unnecessary.

(25) In this case, the trial court instructed the jury on the presumption of innocence and the State's burden of proof.[40] Additionally, the trial court thoroughly defined each crime and its elements. For PFBPP, the trial court instructed the jury as follows:

---

[39] *Id.* at 1088 (citing *Manlove*, 2005 WL 277929, at *1).

[40] App. to Opening Br. at A298–99.

11

In order to find Mr. Boyce guilty of possession, purchase, ownership, or control of a firearm by a person prohibited, you must find the State has proved the following elements beyond a reasonable doubt:

One, Mr. Boyce knowingly purchased, owned, possessed, and/or controlled a firearm; and, two, Mr. Boyce was prohibited from purchasing, owning, possessing, and/or controlling a firearm. The parties have stipulated or agreed that Mr. Boyce was a person that was prohibited from purchasing, owning, possessing, or controlling a firearm. Therefore, the parties agree that this element has been satisfied.

Mr. Boyce acted knowingly if he was aware that he was purchasing, owning, possessing, or controlling a deadly weapon at the time and place alleged.

"Firearm" means any weapon from which a shot may be discharged by force or combustion, explosive, gas, and/or mechanical means, whether the weapon is operable or inoperable, loaded or unloaded.

A person who knowing has direct physical control over a thing at a given time is regarded as being in actual possession of it. In addition to actual possession, possession includes any location in or about Mr. Boyce's person, premises, belongings, vehicles or otherwise within his reasonable control. In other words, a person who, although not in actual possession, has both the power and the intention at a given time to exercise control over an item either directly or through another person or persons is then in constructive possession of it. The element of possession is proven if you find beyond a reasonable doubt that Mr. Boyce had actual or constructive possession.[41]

(26) The jury instructions as a whole clearly convey that more than mere presence is required to find Boyce guilty of PFBPP. From the onset, the jury was made aware of Boyce's presumption of innocence and the State's burden of proof.

---

[41] App. to Opening Br. at A299–301.

Additionally, the jury had to consider the evidence to determine whether Boyce had the requisite knowledge to be found guilty of PFBPP. Thus, because the jury was instructed that more than mere presence is required to find a defendant guilty of PFBPP, a separate mere presence instruction was not required here.

(27) Similarly, for CCDW, the trial court instructed the jury that:

> In order to find Mr. Boyce guilty of carrying a concealed deadly weapon, you must find the State has proved the following four elements beyond a reasonable doubt:
>
> One, there was a deadly weapon, in this case, a firearm; two, Mr. Boyce carried the weapon upon or about his person; three, the weapon was concealed; and, four, Mr. Boyce acted knowingly.
>
> "Deadly weapon" is defined to include a firearm or any dangerous instrument which a person used or tried to use to cause death or serious physical injury.
>
> To carrying upon or about his person in this case means the defendant had control of the weapon upon or about his person. Actual bodily contact with the weapon is not required. A weapon is about one's person if it is available and accessible to the defendant for his immediate use. In determining whether the weapon is accessible, consider whether the defendant would have had to significantly change his position in order to reach the weapon and how long it would have taken defendant to reach the weapon if he was provoked.
>
> "Knowingly" here means the defendant knew or was aware of the weapon's presence upon or about his person and that the weapon was concealed.
>
> "Unlawfully," as that term is used in the indictment in this case, means that the defendant carried the concealed weapon without a license as provided by Delaware law. The Delaware criminal code describes the procedures by which a person may be licensed to carry a concealed weapon in the State. Thus, the State need not present evidence of a lack

13

of such a license. If the defendant claims that he lawfully carried a weapon, it is his burden to show that he complied and satisfied Delaware's licensing statute regarding concealed weapons.

Under Delaware law, a concealed weapon is not one which is absolutely invisible, but it is a weapon that is hidden from the ordinary sight of another. In other words, a weapon is concealed if it is hidden from the casual and ordinary observation of another in the normal associations of life. Such ordinary observations may be distinguished from the observations of an investigating police officer or others searching for a weapon. Thus, a weapon may be concealed even though it is easily discoverable through routine police investigative techniques or other similar searches.[42]

(28) As stated above, the jury was informed of the presumption of innocence and the State's burden of proof. To find Boyce guilty of CCDW, the jury was still required to find that Boyce concealed the firearm and that he acted knowingly. Here, the jury instructions as a whole clearly conveyed that more than Boyce's "mere presence" at the crime scene was required to prove his guilt. Therefore, a separate mere presence instruction was not required.

---

[42] App. to Opening Br. at A301–04.

## IV.    CONCLUSION

For the foregoing reasons, we agree with the trial court's decision not to charge the jury with a "mere presence" instruction.  Accordingly, we AFFIRM the Superior Court's judgment of conviction.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

15